IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUT. INS. CO., INC.,       *
5101 Wisconsin Avenue, N.W., Suite 500
Washington, D.C. 20016,       *

      Plaintiff,       *

   v.       *   Case No.

CASUALTY & SURETY, INC.,       *
100 Corporate Parkway, Suite 350
Birmingham, Alabama 35242,       *

      Defendant.       *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**NOTICE OF REMOVAL**

     Defendant Casualty & Surety, Inc., by undersigned counsel, respectfully submits this Notice of Removal and removes this action from the Superior Court for the District of Columbia to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, stating as follows:

**The Complaint, the Summons, and Service of Process**

     1.     On January 22, 2008, Plaintiff PCH Mutual Insurance Company, Inc. ("PCH") filed this action in the Superior Court for the District of Columbia.  The action was titled <u>PCH Mutual Insurance Company, Inc. v. Casualty & Surety, Inc.</u> and was docketed as Case No. 2008 CA 000499 B.  There is only one defendant to this action: Casualty & Surety, Inc. ("CSI").

     2.     The Complaint alleges four causes of action against CSI: three for breach of contract (counts I to III) and one for unjust enrichment (count IV).

     3.     The Complaint's prayer for relief seeks "compensatory damages in the amount of approximately $50,000 for funds wrongly diverted from interest earned on collected premiums,

approximately $30,000 for expenses incurred as a consequence of Defendants breach of contract, [] unknown amounts for fines and taxes . . . [and] punitive damages, pre and post-judgment interest, costs, expenses, [and] attorney's fees."  Compl. at 7.

4.      On January 22, 2008, the Superior Court for the District of Columbia issued a summons to CSI.

5.      On January 30, 2008, CSI was served with the Complaint and the summons by certified mail, return receipt requested, directed to James Godfrey, President.

## Timely Notice of Removal

6.      CSI has filed this Notice of Removal within 30 days of service of the Complaint and summons.

## Diversity Jurisdiction

7.      This case is removable to the federal district court on the basis of diversity jurisdiction.

8.      Plaintiff PCH is a citizen of the District of Columbia because it is a District of Columbia captive insurance company, incorporated under the laws of the District Columbia and has its principal place of business in the District of Columbia.

9.      Defendant CSI is a citizen of Alabama because it is incorporated under the law of Alabama and has its principal place of business in Birmingham, Alabama.

10.     The amount in controversy exceeds $75,000, excluding interests and costs.  The Complaint's prayer for relief seeks, *inter alia*, "compensatory damages in the amount of approximately $50,000 for funds wrongly diverted from interest earned on collected premiums [and] approximately $30,000 for expenses incurred as a consequence of Defendants breach of contract . . . ."  Compl. at 7.

**Removal Procedure**

11.     Having been filed within 30 days of service of the Complaint and summons, this Notice of Removal is timely.

12.     Because the Complaint was filed in the Superior Court for the District of Columbia, this District is the property venue for this action upon removal under 28 U.S.C. § 1441.

13.     A copy of all process, pleadings, and orders served upon Defendants or obtained from the case filed in the Superior Court for the District of Columbia are submitted with this Notice as required by 28 U.S.C. § 1446(a).

14.     Promptly after filing this Notice, undersigned counsel shall file a copy of this Notice with the Clerk for the Superior Court for the District of Columbia.

WHEREFORE, Defendant Casualty & Surety, Inc. respectfully requests that this Court assume jurisdiction in this case as it has been properly removed from the Superior Court for the District of Columbia.

                                        _____/s/_____
                                        Irwin R. Kramer (Bar No.  418795)

                                        _____/s/_____
                                        James M. Connolly (Bar No. 455140)
                                        *KRAMER & CONNOLLY*
                                        500 Redland Court, Suite 211
                                        Owings Mills, Maryland 21117
                                        Tel: (410) 581-0070
                                        Fax: (410) 581-1524
                                        *Counsel for Defendant Casualty & Surety, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

       I HEREBY CERTIFY that on February 19, 2008, a copy of the foregoing was mailed first class, postage prepaid, to:

       Robert H. Myers, Jr., Esquire
       *Morris, Manning & Martin, LLP*
       1401 H Street, N.W.
       Suite 760
       Washington, D.C.  20005


                                             /s/
                                   James M. Connolly

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PCH Mutual Insurance Company, Inc.<br>5101 Wisconsin Ave., N.W., Suite 500<br>Washington, DC 20016 | Casualty & Surety, Inc.<br>100 Corporate Parkway, Suite 350<br>Birmingham, Alabama 35242 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    District of Columbia
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robert H. Myers, Jr. (Bar No. 179242)<br>Morris, Manning & Martin, LLP<br>1401 H Street, N.W., Suite 760<br>Washington, DC 20005<br>(202) 898-0011 | Irwin R. Kramer (Bar No. 418795)<br>James M. Connolly (Bar No. 455140)<br>Kramer & Connolly<br>500 Redland Court, Suite 211<br>Owings Mills, Maryland 21117<br>(410) 581-0070 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government
    Plaintiff

O 3 Federal Question
    (U.S. Government Not a Party)

O 2 U.S. Government
    Defendant

⊙ 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | O 1 | Incorporated or Principal Place<br>of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | ⊙ 2 | Incorporated and Principal Place<br>of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a<br>Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. Antitrust | O B. Personal Injury/<br>Malpractice | O C. Administrative Agency<br>Review | O D. Temporary Restraining<br>Order/Preliminary<br>Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If<br>   Administrative Agency is Involved) | Any nature of suit from any category may<br>be selected for this category of case<br>assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. General Civil (Other) | OR | O F. Pro Se General Civil |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant
☐ 871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure
   of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
   Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
   Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
   Exchange
☐ 875 Customer Challenge 12 USC
   3410
☐ 900 Appeal of fee determination
   under equal access to Justice
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ✗ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ✗ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

This breach of contract action is removable pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $80,000   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  02/18/2008     SIGNATURE OF ATTORNEY OF RECORD  *James W. Connelly*

---

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | | |
|---|---|---|
| PCH MUT. INS. CO., INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 2008 CA 000499 B |
| CASUALTY & SURETY, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant Casualty & Surety, Inc., by undersigned counsel, respectfully submits this

Notice of Filing of Notice of Removal, notifying this Court that Defendant has removed the

above-captioned action to the United States District Court for the District of Columbia.  A copy

of the Notice is of Removal is attached as an exhibit.

_____/s/_____
James M. Connolly (Bar No. 455140)
*KRAMER & CONNOLLY*
500 Redland Court, Suite 211
Owings Mills, Maryland 21117
Tel.: (410) 581-0070
*Counsel for Def. Casualty & Surety, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2008, a copy of the foregoing was mailed

first class, postage prepaid, to:

Robert Myers, Jr., Esquire
Morris, Manning & Martin, LLP
1401 H Street, NW, Suite 760
Washington, DC 20005

_____/s/_____
James M. Connolly

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUT. INS. CO., INC.,                          *
5101 Wisconsin Avenue, N.W., Suite 500
Washington, D.C. 20016,                           *

        Plaintiff,                               *

    v.                                            *    Case No.

CASUALTY & SURETY, INC.,                          *
100 Corporate Parkway, Suite 350
Birmingham, Alabama 35242,                        *

        Defendant.                               *

   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## NOTICE OF REMOVAL

      Defendant Casualty & Surety, Inc., by undersigned counsel, respectfully submits this

Notice of Removal and removes this action from the Superior Court for the District of Columbia

to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, stating as follows:

### The Complaint, the Summons, and Service of Process

      1.     On January 22, 2008, Plaintiff PCH Mutual Insurance Company, Inc. ("PCH")

filed this action in the Superior Court for the District of Columbia.  The action was titled PCH

Mutual Insurance Company, Inc. v. Casualty & Surety, Inc. and was docketed as Case No. 2008

CA 000499 B.  There is only one defendant to this action: Casualty & Surety, Inc. ("CSI").

      2.     The Complaint alleges four causes of action against CSI: three for breach of

contract (counts I to III) and one for unjust enrichment (count IV).

      3.     The Complaint's prayer for relief seeks "compensatory damages in the amount of

approximately $50,000 for funds wrongly diverted from interest earned on collected premiums,



approximately $30,000 for expenses incurred as a consequence of Defendants breach of contract,

[] unknown amounts for fines and taxes . . . [and] punitive damages, pre and post-judgment

interest, costs, expenses, [and] attorney's fees." Compl. at 7.

    4.    On January 22, 2008, the Superior Court for the District of Columbia issued a

summons to CSI.

    5.    On January 30, 2008, CSI was served with the Complaint and the summons by

certified mail, return receipt requested, directed to James Godfrey, President.

### Timely Notice of Removal

    6.    CSI has filed this Notice of Removal within 30 days of service of the Complaint

and summons.

### Diversity Jurisdiction

    7.    This case is removable to the federal district court on the basis of diversity

jurisdiction.

    8.    Plaintiff PCH is a citizen of the District of Columbia because it is a District of

Columbia captive insurance company, incorporated under the laws of the District Columbia and

has its principal place of business in the District of Columbia.

    9.    Defendant CSI is a citizen of Alabama because it is incorporated under the law of

Alabama and has its principal place of business in Birmingham, Alabama.

    10.    The amount in controversy exceeds $75,000, excluding interests and costs. The

Complaint's prayer for relief seeks, *inter alia*, "compensatory damages in the amount of

approximately $50,000 for funds wrongly diverted from interest earned on collected premiums

[and] approximately $30,000 for expenses incurred as a consequence of Defendants breach of

contract . . . ." Compl. at 7.

## **Removal Procedure**

11.     Having been filed within 30 days of service of the Complaint and summons, this

Notice of Removal is timely.

12.     Because the Complaint was filed in the Superior Court for the District of

Columbia, this District is the property venue for this action upon removal under 28 U.S.C. §

1441.

13.     A copy of all process, pleadings, and orders served upon Defendants or obtained

from the case filed in the Superior Court for the District of Columbia are submitted with this

Notice as required by 28 U.S.C. § 1446(a).

14.     Promptly after filing this Notice, undersigned counsel shall file a copy of this

Notice with the Clerk for the Superior Court for the District of Columbia.

WHEREFORE, Defendant Casualty & Surety, Inc. respectfully requests that this Court

assume jurisdiction in this case as it has been properly removed from the Superior Court for the

District of Columbia.

_____/s/_____
Irwin R. Kramer (Bar No.  418795)

_____/s/_____
James M. Connolly (Bar No. 455140)
*KRAMER & CONNOLLY*
500 Redland Court, Suite 211
Owings Mills, Maryland 21117
Tel: (410) 581-0070
Fax: (410) 581-1524
*Counsel for Defendant Casualty & Surety,*
*Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2008, a copy of the foregoing was mailed first class, postage prepaid, to:

Robert H. Myers, Jr., Esquire
*Morris, Manning & Martin, LLP*
1401 H Street, N.W.
Suite 760
Washington, D.C.  20005

_____/s/_____
James M. Connolly

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

PCH MUTUAL INSURANCE COMPANY, INC.
5101 Wisconsin Avenue N.W., Suite 500,
Washington, D.C. 20016.

        Plaintiff,

        v.

CASUALTY & SURETY, INC.
100 Corporate Parkway, Suite 350
Birmingham, AL 35242
        Serve: Mr. James H. Godfrey, Jr.
              2117 Christina Cove
              Hoover, AL 35244

        Defendant.

RECEIVED
Civil Clerk's Office

JAN 2 2 2008

Superior Court of the
District of Columbia
Washington, D.C.

Civil Action No. 08-0000499

**COMPLAINT**
**(Breach of Contract, Breach of Fiduciary Duty, Unjust Enrichment, and Other Equitable**
**Relief)**

COMES NOW Plaintiff, PCH Mutual Insurance Company, Inc. ("PCH"), by and through

its attorneys, and for its Complaint against Defendant, Casualty & Surety, Inc. ("CSI"), states as

follows:

**Jurisdiction**

1.      Jurisdiction of this Court is founded on D.C. Official Code §§ 11-921, 13-423

(2001).

2.      This Court has personal jurisdiction over Defendant pursuant to D.C. Official

Code § 13-423, in that Defendant transacted business in the District of Columbia, caused tortious

injury in the District of Columbia, and is subject to licensure and regulatory authorities in the

District of Columbia.

1

## Parties

3.      Plaintiff, PCH Mutual Insurance Company, Inc., a risk retention group and District of Columbia captive insurance company, whose office is located at 5101 Wisconsin Avenue, N.W., Suite 500, Washington, D.C. 20016.

4.      Defendant, Casualty & Surety, Inc., an Alabama domiciled corporation, whose office is located at 100 Corporate Parkway, Suite 350, Birmingham, Alabama 35242.

## Factual Background

5.      PCH was organized and incorporated as a captive insurance company in the District of Columbia on or about April 30, 2004. PCH is in the business of providing claims-made professional and general liability insurance to assisted living facilities, personal care homes, adult family homes and adult foster homes in 31 states.

6.      CSI is a wholesale brokerage firm domiciled in Alabama.

7.      On or about March 31, 2004, PCH entered into an Administrative Services Agreement with CSI ("CSI Agreement"). A true and accurate copy of the CSI Agreement is attached hereto as Exhibit A.

8.      Under the CSI Agreement, CSI was responsible for "the development, preparation and dissemination of policies, application forms, the adherence to insurance underwriting guidelines, the preparation and issuance of policies, endorsements, notices of cancellation, notices of non-renewal, notices of reinstatement, and the application of rates." In consideration for these services, CSI was to receive a fee of ten percent of gross earned premium payments. The CSI Agreement was to expire on March 31, 2014.

2

9.    The District of Columbia Department of Insurance, Securities, and Banking ("DISB") approved the CSI Agreement as part of PCH's original business plan on or about April 30, 2004.

10.    Under the CSI Agreement, CSI was to receive premiums collected from the marketing manager and then remit net insurance premiums to PCH. Upon information and belief, CSI remitted the net premiums to Risk Services, LLC, the captive manager, and Risk Services transferred the funds to PCH.

11.    Upon information and belief, after CSI received premiums collected and before CSI remitted the funds to Risk Services, CSI placed the funds in interest bearing accounts and retained all interest earned on the funds without consent from PCH.

12.    On or about April 21, 2004, PCH entered into a Marketing Agreement with Personal Care & Assisted Living Insurance Center, LLC ("PCALIC") ("PCALIC Agreement"). Under the PCALIC Agreement, PCALIC was responsible for variety of tasks related to marketing and promoting PCH's programs.

13.    On or about April 21, 2004, PCH and CSI agreed that PCALIC would underwrite future policies. CSI would be responsible for issuing policies per PCALIC's instructions and forwarding premiums collected from PCALIC to Risk Services.

14.    DISB approved the PCALIC Agreement as part of PCH's original business plan on or about April 30, 2004, and subsequently approved a change on or about November 2005 that increased PCALIC's commission from 13 percent to 15 percent.

15.    PCH's Underwriting Guidelines require CSI to issue and mail policies to PCALIC within 30 days of request by PCALIC. A true and accurate copy of the Underwriting Guidelines is attached hereto as Exhibit B.

3

16.    CSI must adhere to the "Underwriting Guidelines," pursuant to paragraph 2 of the CSI Agreement, as more fully alleged in paragraph 8 of this Complaint and incorporated herein by reference.

17.    Between on or about October 1, 2007 and on or about December 31, 2007, CSI failed to issue 179 policies requested by PCALIC. During the same time period, CSI failed to issue 83 policies within 30 days.

18.    On or about 2004 until 2006, CSI placed reinsurance with London. Beginning in April 2007, PCH requested that CSI obtain competitive bids for reinsurance. CSI failed to obtain bids and did not exercise the cancellation clause of PCH's existing coverage. On or about the last day of the existing reinsurance agreement coverage, PCH cancelled the policy so that it would not be locked in for another year.

19.    Upon information and belief, CSI is not a licensed broker in the District of Columbia. Upon information and belief, CSI also does not have a non-resident insurance producer's license in the District of Columbia.

20.    On or about October 10, 2007, PCH received a letter from the District of Columbia's Department of Insurance, Securities and Banking stating that CSI's placement of reinsurance and underwriting requires CSI to be licensed as a managing general agent. A true and accurate copy of the letter is attached hereto as Exhibit C.

21.    On or about January 22, 2008, PCH terminated the CSI Agreement for cause.

## COUNT I
### (Breach of Contract—Policy Issuance)

22.    Paragraphs 1 through 17 are incorporated herein by reference as if fully realleged.

4

23.    Defendant CSI has untimely issued or failed to issue policies on behalf of PCH from on or about October 1, 2007 until December 31, 2007, in violation of the CSI Agreement. Paragraph two of the CSI Agreement (Exhibit A) requires CSI to adhere to the Underwriting Guidelines (Exhibit B) and to issue policies "at the direction and under the supervision of [PCH]." The Underwriting Guidelines require PCH to issue policies within 30 days of inception. Paragraph four of the CSI Agreement also requires CSI to cooperate with any of PCH's other service contractors or third-party administrators, such as PCALIC.

24.    Defendant's failure to timely issue policies, pursuant to the CSI Agreement and the Underwriting Guidelines, constitutes a breach of contract.

25.    As a direct and proximate result of Defendant's failure to timely issue policies for PCH from on or about October 1, 2007 until December 31, 2007, PCH has suffered damages and incurred monetary damages through costs to obtain a new service provider.

## COUNT II
### (Breach of Contract—Managing General Agent License)

26.    Paragraphs 1 through 21 are incorporated herein by reference as if fully realleged.

27.    Defendant CSI has conducted itself as a "managing general agent," as defined under D.C. Code § 31-1501(4)(A), by binding PCH for reinsurance between on or about January 1, 2004 and on or about December 31, 2006. A managing general agent must be licensed as a broker in the District of Columbia or a non-resident insurance producer. D.C. Code § 31-1502.

28.    Paragraph 2.a of the CSI Agreement (Exhibit A) requires CSI to observe and comply with all applicable laws and regulations in the performance of its services.

29.    Defendant's failure to be properly licensed as a broker or non-resident producer in the District of Columbia constitutes a breach of contract.

5

30.    As a direct and proximate result of Defendant's failure to be properly licensed as a broker or non-resident producer, PCH has been damaged by relying on Defendant's representations, which have left PCH subject to regulatory sanctions and violations.

### COUNT III
### (Breach of Fiduciary Duty)

31.    Paragraphs 1 through 11 are incorporated herein by reference as if fully realleged.

32.    As an agent of PCH, Defendant owed a fiduciary duty to PCH. This fiduciary duty included the obligation to act in good faith, honesty, and fair dealing; to make full and frank disclosures; to avoid damage to the interests of PCH; and not to promote its own interests to the detriment of PCH.

33.    Defendant committed willful and intentional acts and omissions which breached its fiduciary duty to PCH, which acts and omissions include, but are not limited to, self-dealing and wrongful diversion of funds from PCH by placing the funds in interest bearing accounts and retaining all interest earned on the funds without consent from PCH.

34.    As a direct and proximate result of the Defendant's breach of its fiduciary duty, PCH has suffered monetary damages.

35.    Defendant breached its fiduciary duty and obligations owed to the PCH intentionally, fraudulently, and in conscious disregard of the rights of PCH with the knowledge of a likelihood of economic injury to PCH, and at all times to further its own economic interests at the expense of the PCH.

### COUNT IV
### (Unjust Enrichment, Equitable Relief)

36.    Paragraphs 1 through 11 are incorporated herein by reference as if fully realleged.

37.    Defendant has wrongfully obtained funds which rightfully belong to PCH.

6

38.     Defendant obtained these funds (interest earned on premiums collected and held) without consent from PCH, and against all principals of the justice and equity.

39.     This diversion of funds by Defendant has caused the Defendant to be unjustly enriched to the detriment of PCH. As a result, PCH has been damaged.


WHEREFORE, the Plaintiff prays as follows:

A.     That judgment be entered in favor of plaintiff against Defendant for compensatory damages in the amount of approximately $50,000 for funds wrongfully diverted from interest earned on collected premiums, approximately $30,000 for expenses incurred as a consequence of Defendant's breach of contract, and unknown amounts for fines and taxes.

B.     That the plaintiff be awarded punitive damages, pre and post-judgment interest, costs, expenses, attorneys' fees; and

C.     That this Court award such other and further relief to plaintiff as it shall deem proper.

Respectfully submitted,

Robert H. Myers, Jr.

ROBERT H. MYERS, JR. (#179242)
Morris, Manning & Martin, LLP
1401 H Street NW
Suite 760
Washington, D.C. 20005
202-898-0011

Dated: January 22, 2008

Attorney for Plaintiff PCH Mutual Insurance Company, Inc.

7

**EXHIBIT A**

## PCH MUTUAL INSURANCE COMPANY, INC.
## A RISK RETENTION GROUP

### Administrative Services Agreement

This Agreement is made this _3l_ day of _March_, 2004 by and between PCH MUTUAL Insurance Company, a RISK RETENTION GROUP, a District of Columbia captive insurance company (hereinafter referred to as the "Group"), and Casualty and Surety, Inc., an Alabama domiciled corporation (hereinafter referred to as "Administrator"), to provide program administrative services for Group's liability insurance programs.

It is understood that the Group, for the consideration of fees to be paid, has retained the Administrator to perform the management and administrative services described herein in connection with the operation of the Group's liability insurance programs.

In consideration of the mutual covenants and agreements made herein, for good and valuable consideration, receipt of which is hereby acknowledged, the Administrator and the Group hereby agree to the following:

1. **Effective Date of the Agreement.** The term of this Agreement shall be for a period ten (10) years, commencing on the _3l_ day of _March_, 2004, and expiring on _March 3l_, 2014, unless otherwise canceled pursuant to the terms of this Agreement.

2. **Services of the Program Administrator.** As of the Effective date, and until canceled as provided herein, the Group hereby grants authority and responsibility to the Administrator for the development, preparation and dissemination of insurance policies, application forms, the adherence to insurance underwriting guidelines, the preparation and issuance of policies, endorsements, notices of cancellation, notices of non-renewal, notices of reinstatement, and the application of rates as approved by the Group's Board of Directors. All services provided by the Administrator hereunder shall be at the direction and under the supervision of the Group. The Group retains all powers not expressly or by necessary implication delegated to the Administrator by this Agreement.

    a. In the performance of its services, Administrator shall observe and comply with all applicable laws, regulations and ruling of applicable governmental agencies, bureaus or commissions.

    b. Administrator shall maintain operations facilities and the staffing of such facilities and shall maintain financial and underwriting data and reports consistent with being the Group's captive administrator.

Initials

c. Administrator shall, at all times, act as an independent contractor. Nothing contained herein shall be construed to create an employer/employee relationship, partnership or join venture between the Group and Administrator.

d. Administrator warrants and represents that it is in good standing in its state of domicile, as an ongoing obligation throughout the term of this Agreement, shall take all necessary steps to remain in good standing.

3. <u>Exclusive Services.</u> The Group shall employ exclusively the services of the Program Administrator during the term of this Agreement, and any extensions thereto. Such exclusive representation shall mean that the Group shall not solicit or employ any other person(s) or entity who provides similar services either directly or indirectly.

4. <u>Cooperation.</u> The Program Administrator shall at all times cooperate with the Group's other service contractors and third-party administrators assigned to carry out the policies of the Group's board of directors, and the claims service administrator.

a. <u>Limitations.</u> The Program Administrator's authority to represent the Group is expressly limited as described herein, and shall be in accordance with such instructions as from time to time may be given by the Group's board of directors, or its authorized representative.

5. <u>Receipt of Funds: Accounts.</u> The Administrator shall have responsibility to bill, collect, remit and account for premiums under this program.

6. <u>Expenses.</u> The Administrator shall pay all expense incurred in connection with the underwriting, issuing and servicing or business written under this Agreement, including but not limited to the following:

b. Cost of printing and producing policies, endorsement, notices, records, and reports at all documents required to fulfill the Administrator's obligations under this agreement.

The Administrator shall be reimbursed by the Group for assessments including fees and assessments of rating, service or actuarial organizations incurred on behalf of the Group in connection with the business underwritten in the Group's program.

7. <u>Books, Accounts, and Records.</u> The Group shall be entitled to receive true and correct financial and document records for payments authorized to the Group's reinsurer(s) and reinsurance bordereaux related thereto (collectively, the "Business Records"). All Business Records, shall be maintained at all times in accordance with regulatory practices. All Business Records shall be subject, during Administrator's normal business hours, to inspection, duplication, and/or audit by a duly authorized representative of the Group and

Initials

shall be made available for inspection at the Administrator's offices, following the expiration or termination of this Agreement.

All records related to the business of the group as defined above or elsewhere referred to in this Agreement, including but not limited to underwriting, policy, and financial records, and account files, (collectively the "Underwriting Files") shall be the property of the Group and shall be subject, during normal business hours of he Administrator, to inspection, duplication, and/or audit by a duly authorized representative of the Group and/or representative of any authorized reinsurer or regulatory agency. All original Underwriting Files shall be promptly delivered to the Group upon request and promptly following the expiration or other termination of this Agreement. Administrator shall be entitled to a complete copy of all data the Administrator has provided at Administrator's sole expense. The obligations of Administrator under this Agreement shall not be discharge, altered or modified by the delivery of any original Underwriting Files to the group.

8. <u>Compensation:</u> In consideration of the services which shall be performed by the Administrator, the Group shall pay to the Administrator a fee of ten (10%) of gross earned premium payments received by or on behalf of the Group from the participants for liability insurance coverage.

   a. **Payment Schedule.** Fees are collected by the marketing manager with commissions deducted and remitted to Program Administrator. Program Administrator remits to Group net insurance premiums and 100% of capital contributions.

   b. **Refunds of Premium Payments.** If the Group shall for any reason (other than for the purpose of declaring a dividend or surplus) refund any gross premium payments made by a participant, then the Administrator shall refund the pro rata portion of its fee on such premium, and shall forfeit, refund and/or rebate to the Group said pro rata portion of its fee received by Administrator on account thereof within forty-five (45) days of Administrator receiving notice of the refund

9. <u>Termination Agreement.</u> Subject to the provisions contained in paragraph 4, this Agreement may additionally be terminated as follows:

   a. **Termination by Mutual Consent.** This Agreement may additionally be terminated upon the mutual written consent of the parties.

   b. **Termination for Cause.** The Group may terminate this Agreement immediately for cause due to breach of conduct by the Administrator, its employees, agents and/or brokers: (1) for failure to comply with the terms of this Agreement; (2) for suspected fraud (as determined by the Group); (3) for gross negligence in the performance of its duties and responsibilities (as determined by the Group); (4) for willful and wanton misconduct (as determined by the Group); (5) for failure to be properly licensed to be able to perform the duties and responsibilities of a

Initials

Administrator under this Agreement; and (6) for any improper, immoral, disreputable or illegal acts which, as determined by the Group, brings discredit to the Group or otherwise causes the Group to be viewed negatively by the public or in a false light.

    i. In the event of termination under paragraph 5(b), the Administrator's compensation shall cease, effective the date of termination. Neither Administrator nor any employee, agent, broker, person or corporation claiming through Administrator shall have any claim against the Group for compensation of any nature, except for compensation which in the usual and lawful course of business had fully accrued and become payable to Administrator prior to the effective date of termination.

c. In the event the Agreement is voluntarily terminated for reasons other than those set forth in paragraph 4(b), then the following provisions shall apply;

    i. If termination is by mutual agreement of the parties:
        a. The Administrator shall be paid any gross earned premium fees owed up to the date of mutual termination.
        b. If the termination is unilaterally initiated by the Group, then the Administrator shall be entitles to his fee on all business placed in the Group from the date of termination until the normal expiration of this contract.

    ii. The obligations of each party to the other specified in the Agreement shall survive with reference to business in force at the time of termination and shall continue to be discharge promptly.

    iii. The Administrator's records or knowledge of name of policyholders and expiration dates shall not be disclosed by the Administrator to any agent, broker, or other person, unless required by law, nor used by the Administrator for the purposes of solicitation.

10. **Hold Harmless Agreement.** The Administrator, its employees, agents, brokers and representatives, shall hold the Group harmless from any and all liabilities, injuries or damages, whether for personal injury, property damage, or for any other occurrence or injury which may result from the negligent, intentional or otherwise wrongful acts, errors, or omissions of the Administrator, its employees, agents, brokers and representatives or anyone else acting on behalf of the Administrator. The Administrator shall indemnify and hold the Group harmless from any and all causes of action, claims or demands arising out of the Administrator's performance of its duties under this Agreement, or anyone acting on behalf of the Administrator, except such actions as may have been specifically directed by the Board of Trustees of the Group or by and through its properly authorized representative.

Initials

11. <u>Retention of Coverage</u>.  The Administrator acknowledges that the Group has the right to terminate members under its Bylaws and <u>other agreements</u>, and it shall assist and cooperate with those terminations should the Group seek the assistance of the Administrator.

12. <u>Group Records</u>.  On termination of this Agreement, Administrator shall promptly surrender to the Group all records that in any way pertain to the business of the Group or to any of its members, including sales manuals, expiration records, invoice copies, Group member lists, and other written, printed, or computer-stored information pertaining to the Group. It is agreed that the Group owns all records that in any way pertain to the business of the Group.

13. <u>Fee Modification</u>.  The fee rate specified in the Agreement may be modified by the Group, without previous notice, to conform legally with the fees prescribed by any District of Columbia law or regulation relating to any insurance products or offerings of the Group.

14. <u>Injunction</u>. In the event that the Administrator, its employees, agents, brokers and/or representatives, attempt to breach the terms of this Agreement, the Group shall, in addition to its rights and remedies available to it at law or in equity, have the right to seek an injunction against the Administrator to enforce the provisions of this Agreement. The Administrator agrees to be responsible for and to reimburse the Group for any attorney's fees and costs associated with any legal action taken by the Group to enforce the terms of this Agreement.

15. <u>Assignment</u>.  No assignment of this Agreement or fees earned or accrued under this Agreement shall be valid unless consented to in writing by the Group.

16. <u>Insurance/Fidelity Bond</u>.

    a.  Insurance. The Administrator shall agree to obtain and carry errors and omissions insurance applicable to its activities on behalf of the Group in an amount equal to one million dollars ($1,000,000.00) single limit liability; and two million dollars ($2,000,000.00) aggregate liability. A copy of the certificate of said insurance shall be delivered to the Group at the beginning of the term of this Agreement. The Administrator shall give the Group thirty (30) day's notice prior to the cancellation of any such insurance.

17. <u>Arbitration</u>. Any disputes concerning any aspect of this Agreement may be submitted to binding arbitration. The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

18. <u>Waiver</u>. Failure to enforce any of the provisions of this Agreement shall not constitute a waiver of such provision or any other provision of this Agreement.

Initials

19. **Notices.**   Notices required pursuant to this Agreement shall be sent to the parties addressed as follows:

> PCH Mutual Insurance Co.,
> A Risk Retention Group
> 5101 Wisconsin Avenue N.W., Suite 500
> Washington, D.C. 20016

> Mr. David Condon, President
> Casualty and Surety of Illinois, Inc.
> 11 Willow Tree Court
> Elmhurst, IL 60126

16. **Entire Agreement.** This Agreement supersedes any and all oral· or written agreements heretofore made relating to the subject matter hereof and constitutes the entire agreement of the parties relating to the subject matter hereof.

17. **Headings.**  The heading in this Agreement are inserted for the convenience of reference only and shall not be a part of or control or affect the meaning of this Agreement.

18. **Further Assurances.**  Each party hereto shall from time to time on or after the effective date execute and deliver to any other party hereto all such further documents as shall reasonably be requested in order to complete the relationship contemplated by the Agreement.

19. **Partial Validity.**  If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extend be invalid or unenforceable, the remainder of the Agreement, or the application of such term or provision to persons or circumstance other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of the Agreement shall be valid and be enforced as written to the fullest extent permitted by law.

20. **Binding Effect and Governing Law.** This Agreement binds and benefits the parties, their permitted successors, assigns and transferee, if specifically enforceable and governed by and construed in accordance with the law of the California

21. **Superseding Agreement.**  This Agreement shall supersede all other agreements entered into between the parties.

Initials

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

PCH MUTUAL INSURANCE CO.,
A RISK RETENTION GROUP

By: _Matthew C. Harvey_
Title: _Chairman_
Address: _One Windsor Way_
_Pgh., Pa., 14257_
Telephone: _412-364-6411_

CASUALTY AND SURETY, INC.

By: _____
Title: _President_
Address: _300 Corporate Parkway suite G1_
_Birmingham, AL 30242_
Telephone: _205-985-0713_

Initials _____

EXHIBIT B

## PCH/ALF INSURANCE COMPANY, A RISK RETENTION GROUP
## INSURANCE PROGRAM
## UNDERWRITING GUIDELINES

### PROGRAM PARAMETERS

This Risk Retention Group (RRG) Insurance program is designed to provide General and Professional Liability coverage for Personal Care Homes and Assisted Living Facilities.

The program is targeted at small- to medium-size facilities although larger ones may be considered as long as they qualify under these guidelines. We doubt that accounts generating $75,000 or more in premium will find us competitive and that is our maximum premium.

### ELIGIBLE ACCOUNTS

To be eligible, a facility must be a PCH/ALF as defined by the state association.

The program will accept only those facilities with more than four (4) beds.

The program will not accept facilities that are part of any national, state or regional chain ownership.

All facility owners must be members of NAPCHAA or other state association or become a member within 60 days.

Insured must agree, unless it has already done so, to implement TAGWEB Risk Management Program and NAPCHAA Medical Assistance Program within 90 days of binding. Fees are charged in quote to cover costs of those programs. We will order inspections on every insured to make sure this is in place and to evaluate all life safety measures. That fee is also included in the quote. Failure to correct recommended life safety measures or to implement TAGWEB and MAP programs will also result in cancellation.

We will order pre-binding inspections on all accounts rated up at a premium of $20,000 or greater.

The prospective insured must meet all minimum requirements required by state which are summarized in the Underwriting Review Sheet (attached).

Additional binding requirements are shown on the Quote Sheet, which is also attached.

1

## COVERAGES AND LIMITS OFFERED

- General and Professional Liability—Claims Made Forms—ISO and state approved custom endorsements. Aggregate limit applies to each coverage—there are no separate limits for any of the coverages shown below.
- Abuse & Molestation.
- Minimum Limits:  $500,000/500,000 (including abuse and molestation) (see actuarial report for rates) at minimum premium of $3,000.
- Maximum Limits:  $1million / 1 million (including abuse and molestation) at $3,500 minimum premium.
- Vicarious Medical Malpractice.
- Hired and Non-owned Auto.
- Employee Benefit Liability.
- Retro date not more than two years for accounts with existing claims made coverage for both years (otherwise less for shorter periods of coverage).
- Extended Reporting Periods: 150% of expiring premium for one year; $175% AP for two years; 200% AP for three years. These elections do not increase the aggregate of the expiring policy.

## SPECIFICALLY PROHIBITED COVERAGES

- Advertisers, Publishers, Broadcasters and Telecasters' Liability (*as respects Personal Injury*)

- Aviation Liability

- Directors and Officers Liability

- Employers' Liability and FELA (*Federal Employers' Liability Act*), USL&H or Jones Act

- Employment Practices Liability

- Environmental Impairment Liability (*Pollution*)

- ERISA—fiduciary liability arising from the Employee Retirement Income Security Act of 1974

- Financial Guarantees

- Liquor Liability

- Owners or Contractors Protective Liability

- Personal Umbrella Liability

- Pollution Liability (*EIL*)

- Railroad Protective Liability

- Title

- Workers' Compensation

## UNDERWRITING INFORMATION REQUIRED
- Acord 125 application information section.
- Acord 126S with carrier and premium.
- State association application.
- Five (5) years hard copy loss runs, currently valued, if in business for five years. Otherwise, loss runs matching years in business, unless new facility.
- Numbers of years in operation.
- Copy of state license and most recent inspections.
- Accident rate must be same for state or national average; debit for 25% over. Decline if accident rate is greater than 25%.

## UNDERWRITING CRITERIA
- Association member in good standing
- Statewide minimum rate at $208 per bed ($156 for $500,000 limit), but we expect to average $300 per bed.
- Rate for Philadelphia $417 per bed at $1,000,000 ($312 for $500,000 limit), but we expect the rate for these ALF's to average over $500.
- Three (3) to five (5) year loss ratio—Maximum 60% (debits start at 30%).
- Maximum of 2 GL/PL losses in last 3 years or 3 in last 5 years
- Full explanation of any claim over $10,000.
- Number of licensed beds and total revenue.
- No bed-ridden residents.
- No more than 15% wheelchair users.
- Profitability shown in one of last two years from income statement or balance sheet.
- Accounts with loss frequency will be referred to reinsurer or declined.
- Accounts with one "shock" loss in last 3 to 5 years will be considered but will be referred. A shock loss is any incurred loss valued at $100,000 or more.
- If above the minimum premium, credit can be given for a Risk Management program in place and Superior Life Safety measures.
- Credit may be given for certain Life Safety Features in place:

3

1. One Story
2. Alarms, including hallways.
3. Age and Construction of building.
4. Management experience.

- The program underwriter will consider information from an *inspection of a facility* in determining suitability of the account to the program whenever the application is ambiguous or otherwise marginal. The insured must pay for the inspection.

The information will include, but not be limited to, the following:
  o Life Safety Features—any immediate life safety issues in last 3 years of state survey will result in declination.
  o Smoke, Fire and Door Alarms
  o Medication Assistance Program certification (if not done within 90 days, insured will be canceled.
  o Implementation of TAGWEB Risk Management Program (if not done within 90 days, insured will be canceled.
  o Implementation of abuse & Molestation Policies & Procedures
  o Handrails
  o Housekeeping
  o Maintenance
  o Record Keeping—resident's
  o Any obvious and substantial exposure increase over that listed on the applications.

This type of information could affect further account debiting, recommendations, and/or notice of cancellation.
    *See attached table.*

## CRITERIA FOR NEW OR START-UP FACILITY

- Full Resume of Owner with all experience.
- Maximum GL/PL limits 1st year — $500/500/25 (A/M) at Min. Prem. of $3,000.
- Must become member of state association within 60 days.

## PROCESSING GUIDELINES

- The underwriting authority and policy issuance is to be handled in house by the designated program administrator.

- Accounts with special circumstances, deficiencies or requests may be referred to the reinsurance carrier

- It is necessary to clear submissions prior to quoting for confirmation of state association membership

- Account renewal will be automatic with an application unless one of the following conditions occurs:
    1. A significant change in operations
    2. An exposure (number of beds, revenue) change of more than 25%
    3. A rate reduction of more than 15%
    4. A change of policy limits
    5. A loss or reserve change of more than $25,000
    6. Abuse policy and procedure in effect according to PCALIC Abuse Policy (included with these guidelines).
    7. Compliance with Managing Liability in Personal Care Homes forms (included with these guidelines)
    8. Compliance with Medication Training Certification (included with these guidelines).

## FORMS AND ENDORSEMENTS

This program will use standard ISO Claims Made Forms and Endorsements plus certain manuscript forms. The RRG, Casualty and Surety, Inc. and the Reinsurance Carrier must approve the use of any other forms.

- o   Attached is a list of the Forms

## CERTIFICATES OF INSURANCE

Casualty and Surety, Inc. must review all certificates of insurance for accuracy. Retail Agents may issue certificates with a copy to be forwarded to Casualty and Surety, Inc. within 24 hours of issuance.

## BINDERS OF INSURANCE
Casualty and Surety, Inc. will issue binders of Insurance.

- Policies and endorsements must be signed by the designated underwriter

- Policies should be issued and mailed to the producing agent/broker within 30 days of inception

- All endorsements should be processed and issued within 30 days of requested effective date

- All policies must be written with an annual term (12 months); except to provide the insured with concurrent policy terms. The minimum policy term is 3 months and a maximum of 12 months.

5

- Compliance with state provisions regarding cancellations, non-renewals and altered terms and conditions is required

- Cancellations may not be back-dated more than 30 days. That can occur only when insured shows proof of other coverage for the time period in question

- All claims will be reported to and handled by the designated TPA, who will have authority to settle up to $50,000. All claims will be notified to the claims committee, which may authorize settlement up to $100,000. Lead reinsurer must authorize all settlements above that amount.

6

## UNDERWRITING GUIDELINE TABLE

| ITEM | ISSUE / LIMIT | GUIDELINE | RESULT |
|---|---|---|---|
| State Association Membership | Requirement | Confirm with Association | Must be in Good Standing or within 30 days of inception date |
| Loss Ratio | 3 to 5 Years Hard Copy Loss Run | Maximum of 3 to 5 years / 60 % | Over 60% > declined Under 60% > accept |
| Bed-Ridden Residents | Not Personal Care Home | Not Allowed | Decline |
| Loss Frequency | | No more than 2 GL/PL in 3 years/ If accident rate exceeds 25% of national average No more than 3 GL/PL in 5 years | Decline<br><br>Decline<br><br>Decline |
| Shock Loss | No more than 1 in 5 years | Shock loss = >$99,999 | Refer to Reinsurer |
| License | History of Revocation | Within last 5 years Prior to above | Decline Refer to Reinsurer |
| Risk Management Program | In Place | Must attend Approved Class within 6 months | Accept |
| Start-Up | Maximum Limits | Need Experience Full Resume Membership in state association | Refer to Reinsurer |
| Admission Assessment | Who Does It | Must be Certified Staff | Accept |
| Re-Assessment | Who Does It | Must have written procedure program | Accept |
| Medical Staff | Certifications | Must be Certified or have procedure | Accept |
| Restraints | Use of restraints | Not Permitted | Decline |
| 15% Wheel Chair | Increased exposure | Staff to resident ratio increased | Debit |
| Accident Rate | Not greater than 25% of State avg. | 0-25% of State Over 25% of State | Debit Decline |

7

# UNDERWRITING INSPECTION GUIDELINES

| ITEM | ISSUE | GUIDELINES | RESULT |
|------|-------|-----------|--------|
| *INSPECTION* | Life Safety Features | At Least as Required by State | Recommendation |
| *INSPECTION* | Alarms: Smoke, Fire, and Door | At Least as Required by State | Recommendation |
| *INSPECTION* | Handrails | At Least as Required by State | Recommendation |
| *INSPECTION* | Housekeeping | Rate: Poor Average Good | Recommendation or Direct Notice of Cancellation |
| *INSPECTION* | Maintenance | Rate: Poor Average Good | Recommendation or Direct Notice of Cancellation |
| *INSPECTION* | Resident Record Keeping | Rate: Poor Average Good | Recommendation or Direct Notice of Cancellation |
| *INSPECTION* | Increase in Exposure | Re-rate or Refer | Recommendation or Direct Notice of Cancellation |
| *INSPECTION* | Medication Admin Program | Required | Must comply within 90 days |
| *INSPECTION* | TAGWEB | Required | Must comply within 90 days |
| *INSPECTION* | Abuse & Molestation Risk Management | Required | Must comply within 90 days |

See included *Department of Welfare Regulations, Labor & Industry Regulations* and *PCHALFIC Risk Management Implementation Tools.*

Underwriting Procedure:
1. Make sure insured passes Underwriting Review.
2. Review application.
3. Make sure all required documents have been received prior to quoting.
4. Review applicable debits and credits. Maximum credits are 25%, if above minimum premium and maximum debits are unlimited.
5. Calculate Premium from Underwriting Review.
6. Use standard Quote Sheet.

## PERSONAL CARE HOME AND ASSISTED LIVING
### GENERAL & PROFESSIONAL LIABILITY UNDERWRITING REVIEW

| APPLICANT NAME: | Yrs In Business: |
|---|---|
| MAILING ADDRESS: | |
| COUNTY: | DATE ESTABLISHED: |

TYPE OF ENTITY:  ☐ Corporation  ☐ Sole Proprietor  ☐ Partnership
☐ Non-profit  ☐ For Profit  ☐ Other _____

|  | **Decline or:  Debit** |  |
|---|---|---|
| Has any license ever been denied or revoked in last 5 years? | ☐ Yes | . |
| Are all these procedures in place? Check the hiring procedures that apply or are performed by this operation. ☐ Criminal Background Checks   ☐ Reference Checks  ☐ Sexual Abuse Screening   ☐ Do you obtain proof of Professional Certifications | ☐ No | _____% |
| Any MD's on staff | ☐ Yes | |
| Is the third shift staff awake at all times? | ☐ Yes | |
| Are employees leased?   ☐ Yes | ☐ No | _____% |
| Does insured get a Certificate of Insurance naming your organization as Additional Insured from the employee leasing firm? | ☐ No | |

*RESIDENT ASSESSMENT*

| Does qualified person oversee admissions? | ☐ No |
|---|---|
| Does insured obtain a Residents Statement of Medical Service Provider? | ☐ No |
| Does insured have an Admission Agreement? | ☐ No |
| Is an evaluation completed on residents 60 days before or 30 days after admission? | ☐ No |
| If "YES", does the Health Statement address violent tendencies, diseases detrimental to others, list of current diseases, chronic conditions, and drug and food allergies. | ☐ No |
| Does the Health Statement include any restrictions in the participant's ability to participate in the programs' activities? | ☐ No |
| Does the Health Assessment include the names of all prescribed medications including the dosage? | ☐ No |
| Are systems in place for evaluating when patients need more care than facility can provide? | ☐ No |

*RESIDENT CENSUS*

| Wheelchair residents exceed 15%? | | |
|---|---|---|
| Any bedridden residents? | ☐ Yes | _____% |
| Is there a formal program for identifying wanderers if they are accepted? | ☐ Yes | |
| Is there a missing resident protocol? | ☐ No | |
| Are restraints used? | ☐ No | |
| Are residents required to notify facility when leaving or returning? | ☐ Yes | |
|  | ☐ No | |

| Are residents whose care requirements begin to exceed "activities of daily living" promptly forwarded to the appropriate facility? | ☐ No |
|---|---|
| Is there a procedure in place to notify family or guardian of noticeable general function or medication condition change? | ☐ No |
| Does the facility have designated staff members who administer medications? | ☐ No |

| | | |
|---|---|---|
| Does facility have a written policy for handling medications? | ☐ No | _____ % |
| Is medication administration staff certified? | ☐ No | _____ % |
| Are signed releases of emergency medical treatment obtained? | ☐ No | _____ % |
| Does facility have written documentation as to whom to notify in the case of a medical emergency? | ☐ No | |

| | |
|---|---|
| *Do Losses exceed 60% in last 5 years?* _____ % | ☐ *Yes* |
| *Are there more than 3 losses in last 5 years* | ☐ *Yes* |
| *Are there more than 2 losses in last 3 years?* | ☐ *Yes* |

### *RN/LPN PROFESSIONAL*

Does insured provide any of application's RN/LPN Professional Services except through a third party?
           ☐ *Yes*

If facility does allow health care services by a third party provider, does it require that the contract for such services be directly between the resident and the third party provider?
           ☐ No

### BUILDING & GROUNDS

| | |
|---|---|
| Are there smoke detectors in facility? | ☐ No |
| Are smoke detectors properly maintained? | ☐ No |

### STATE INSPECTION

| | | |
|---|---|---|
| Is the Accident Rate higher than the State Average? | ☐ Yes | |
| Is the Accident Rate > 25% higher than the State/National average? | ☐ Yes | % _____ |
| Any immediate life safety issues in last 3 state surveys? | ☐ Yes | |

**Other Notes, Debits and Credits**

| Question # | Loc. # | Notes | Debit | Credit |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total Debits and Credits
Base Rate     $ _____
Add Debits     $ _____
Deduct Credits     $ _____    (Cannot go below base premium or above 25%)
No. of Beds     _____

Premium Total     $ _____

10

PCHALF
**Insurance
Company**
*Risk Retention Group*

**PERSONAL CARE HOME AND ASSISTED LIVING
FACILITY INSURANCE COMPANY, INC.
Risk Retention Group**

NEW BUSINESS QUOTATION
Quote Valid From:
To:
Proposed Effective Date:

Prospect::

Summary of Coverage Quoted

| | |
|---|---|
| General Liability | $ |
| Non-owned Auto Liability | $ |
| Terrorism Coverage | $ |
| Total Premium | $ |
| Taxes | $ |
| Inspection Fees | |
| Terrorism Coverage | $ |
| Capital Contribution | $ |

Producer:

**GENERAL CONDITIONS**
GA41531001 2001 Notice to Policy Holders Commercial General Liability
Coverage Forms and Endorsements
GA325PA1095 PA Amendatory Endorsement
GA201010 Commercial General Liability Broadened Endorsement
CG2116 Exclusion - Designated Professional Services
CG2146 Exclusion Abuse or Molestation
CG2244 Exclusion Services Furnished by Health Care Provider
CG2252 Exclusion Medical Payments for Patients
TBD Sexual Abuse or Molestation Liability

**General Liability Limits Quoted:**

| | |
|---|---|
| General Aggregate | $ |
| Products/Completed Operations | $ |
| Personal/Advertising Injury | $ |
| Each Occurrence | $ |
| Fire Legal Liability | $ |
| Medical Payments | $ |
| Professional Liability | $ |
| Sexual Abuse & Molestation | $ |
| Non-owned Auto | $ |

11

| Rating: Loc. # | Address | Classification Code | Premium |
|---|---|---|---|
| | | | |

## Conditions of Quote:

1. Insured must complete medication administration training within ninety (90) days.
2. Insured must implement TAGWEB Loss Control within ninety (90) days (including current residents).
3. Insured must implement Abuse and Molestation procedures within ninety (90) days.
4. Original signed and dated application within 7 days of binding.
5. Original signed copy of this form with TRIA acceptance/rejection within 7 days of binding.

Notes from application

Other debits:

Credits (max 25%):

We hereby notify you that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase coverage for losses arising out of acts of terrorism, as defined in "Section 102(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrent with the Secretary of State and the Attorney General of the United States: to be an act of terrorism, to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the US and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the US or to influence the policy or affect the conduct of the US Government by coercion.

Coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed the US under a formula established by federal law. The US pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided above and does not include any charges

12

**EXHIBIT C**

## Government of the District of Columbia
### Department of Insurance, Securities and Banking



Thomas E. Hampton
Commissioner

October 10, 2007

Mr. Jon Harkavy
Vice President & General Counsel
2233 Wisconsin Avenue, N.W.
Suite 310
Washington, DC 20007

**Re:    PCH Mutual Risk Retention Group (PCH RRG)**

Dear Mr. Harkavy:

I am writing with respect to the Administrative Services Agreement entered into between
PCH Mutual Risk Retention Group (PCH) and Casualty and Surety, Inc. (CSI).
Pursuant to said contract (Section 2), the Administrator (CSI) is responsible for: "the
development, preparation and dissemination of insurance policies, application forms, the
adherence to underwriting guidelines, the preparation and issuance of policies,
endorsement, notices of cancellation, and notices of non renewal, notices of
reinstatement, and the application of rates".

It is my understanding that from inception of this contract, CSI has performed only the
policy issuance and has not provided any of the other services outlined above and
delineated in said contract. Despite the fact that these services have never been provided,
there has been no reduction in CSI's fees of 10% of gross earned premium payments. It is
my further understanding that CSI has refused or not responded to PCH's request for a
fee reduction to reflect the more limited scope of services performed by CSI than is
required under the contract, and has directed PCH to continue to flow premium
collections made by other service providers to CSI.

DISB is concerned that PCH is operating at variance to its contract with CSI on file with
the Department pursuant to its plan of operation and service provider contracts contained
in its licensure application with no change related thereto approved by the Department.
Moreover, as you are both aware from past correspondence, DISB is concerned with
PCH's expenses which remain significantly higher than industry average. Certainly this
problem is exacerbated by a situation in which CSI has since inception not performed the
bulk of its assigned duties under the contract but has collected a fee which reflects the
provision of all the services outlined in their contract. Any savings so secured by PCH as

a result of a contract re-negotiation shall be dedicated to increasing PCH's surplus and reducing its expenses.

Another concern which DISB has with the existing CSI/PCH contract is the possible lack of proper licensing by CSI to perform its delineated duties under the contract, which is required under section 9(b)(5) of the contract. Given what I understand to be CSI's role in the placement of reinsurance for PCH, combined with CSI's delineated underwriting and claims functions in the contract, it would appear that CSI should be licensed as a Managing General Agent (MGA). In DC, MGA licensure can be satisfied by a non resident producer's license, which it appears that CSI has never secured. A number of other states in which PCH is registered to do business require a separate MGA licensure, which pursuant to your inquiry to CSI would appear that CSI has similarly not secured.

For all these reasons it would appear to be in the best interests of both PCH and CSI to negotiate modifications to their present contract which reflect the actual duties performed by CSI, modified fees reflecting same, and proper licensure by CSI to perform its contractual duties both in DC and in the states where PCH is registered to do business. Please keep the Department advised as to the status of PCH's contract re-negotiations with CSI and CSI's cooperation therewith.

Sincerely,

Dana Sheppard
Associate Commissioner
Risk Finance Bureau

2



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

PCH MUTUAL INSURANCE COMPANY, INC.
    Vs.
                               C.A. No.    2008 CA 000499 B
CASUALTY & SURETY, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

                                          Chief Judge Rufus G. King, III

Case Assigned to: Judge NATALIA COMBS GREENE
Date:  January 22, 2008
Initial Conference: 9:00 am, Friday, April 25, 2008 ●
Location:  Courtroom A-47
             515 5th Street NW
             WASHINGTON, DC  20001





Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_PCH Mutual Ins. Co. Inc._
Plaintiff

v.

Civil Action No.    08 0282

FEB 19 2008

_Casualty + Surety, Inc._
Defendant

   The above entitled action, removed from the Superior Court for the District of Columbia,
has been filed and assigned to Judge **KOLLAR-KOTELLY, J.C.K.K.** . All counsel and/or pro se
litigants must include on any subsequent pleadings both the civil action number and the initials
of the judge assigned to this action.  (See preceding sentence for judge's initials).

   Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the
bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly
recording all counsel of record, counsel for all parties must enter their appearance in accordance
with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's
Office to ensure prompt delivery of notices and orders.

   Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly
spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court
on a wide range of questions.

                                        NANCY MAYER-WHITTINGTON, CLERK

                                        By _Maureen Flemming_
                                           Deputy Clerk

cc: _Robert Myers, Jr._

                                                   929A
                                                   Rev. 7/02