IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUT. INS. CO., INC.,                    *

    Plaintiff,                                  *

v.                                          *       Case No.: 2008-000282 CKK
                                                    [Judge Colleen Kollar-Kotelly]
CASUALTY & SURETY, INC.,                     *

    Defendant.                                 *

    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

    Defendant Casualty & Surety, Inc., by undersigned counsel, respectfully submit this

Motion to Compel Arbitration and Stay Proceedings, stating as follows:

    1.     That Plaintiff PCH Mutual Insurance Company, Inc. ("PCH") and Defendant

Casualty & Surety, Inc. ("CSI") agreed in writing to arbitrate the contractual disputes at issue in

the above-referenced action.

    2.     That the claims arising under the Administrative Services Agreement ("the

Agreement") at issue in this action are arbitrable and there is no legal constraint that renders such

claims nonarbitrable.

    3.     That, in an effort to obtain Plaintiff's consent to this motion, James M. Connolly,

Esquire telephoned Robert H. Myers, Jr., Esquire – counsel for PCH – on Tuesday, February 19,

2008 at 4:28 p.m. and requested PCH's consent to this Motion.  Shortly thereafter, in a 5:36 p.m.

e-mail that same day to Mr. Myers, Mr. Connolly repeated this request.  In addition, on February

21, 2008, Mr. Connolly faxed and mailed to Mr. Myers CSI's Notice of Intention to Petition for

an Order Compelling Arbitration.

4.      That, in a February 22, 2008 e-mail at 5:41 p.m., Mr. Meyers contacted Mr.

Connolly and "advised that PCH Mutual Insurance Company does not intend to consent to

arbitration . . . ."  On Monday, February 25, 2008, at 10:10 a.m., Mr. Connolly telephoned Mr.

Meyers who repeated that PCH would not consent to arbitrate the dispute.

5.      That, because PCH has not consented to the request to arbitrate the disputes

concerning the Agreement, CSI files this Motion and asks this Court to enforce the agreement of

the parties.

6.      That the points and authorities supporting this Motion to Compel Arbitration and

Stay Proceedings are set forth more fully in the accompanying Memorandum in Support of the

Motion to Compel Arbitration and Stay Proceedings.

WHEREFORE, Defendant Casualty & Surety, Inc. respectfully requests that this Court

grant the foregoing Motion to Compel Arbitration and Stay Proceedings.

_____/s/_____
James M. Connolly (Bar No. 455140)
*KRAMER & CONNOLLY*
500 Redland Court, Suite 211
Owings Mills, Maryland 21117
Tel.: (410) 581-0070
Fax: (410) 581-1524
*Counsel for Defendant Casualty & Surety,*
*Inc.*

### REQUEST FOR HEARING

Defendant Casualty & Surety, Inc. respectfully requests a hearing on its Motion to

Compel Arbitration and Stay Proceedings.

_____/s/_____
James M. Connolly

2

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on March 7, 2008, a copy of the foregoing was mailed first

class, postage prepaid, to the following person who does not receive papers via ECF:

Lewis E. Hasset, Esquire
*Morris, Manning & Martin, LLP*
1600 Atlanta Financial Center
3343 Peachtree Street, N.E.
Atlanta, Georgia 30326
*Counsel for Plaintiff PCH Mutual Insurance Company, Inc.*


_____/s/_____
James M. Connolly

E:\OFFICE\CASES\250-001\motion_compel_arbitration.wpd

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PCH MUT. INS. CO., INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 2008 - 000282 CKK |
| | | [Judge Colleen Kollar-Kotelly] |
| CASUALTY & SURETY, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF THE
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Casualty & Surety, Inc. ("CSI"), by undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Compel Arbitration and Stay Proceedings.

**STATEMENT OF FACTS**

On or about March 31, 2004, Plaintiff PCH Mutual Insurance Company, Inc. ("PCH"), a District of Columbia citizen, Compl. ¶ 3, and CSI, an Alabama citizen, id. ¶ 4, entered into an Administrative Services Agreement ("the Agreement") in which CSI agreed to provide various administrative services for PCH's liability insurance programs.  Id. ¶ 7; Exhibit A to the Complaint (the Agreement).[1]  The Agreement contains an arbitration provision, which states as follows:

> **17. Arbitration**.  Any disputes concerning any aspect of this Agreement may be submitted to binding arbitration.  The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

Ex. A ¶ 17.

In addition, the Agreement contains the following choice of law clause:

---

[1] For the convenience of the Court, a copy of the Agreement is attached to this Memorandum as Exhibit A.

**20. <u>Binding Effect and Governing Law</u>**.  This Agreement binds and benefits the
parties, their permitted successors, assigns and transferees, if specifically
enforceable and governed and construed in accordance with the law of
California.

<u>Id.</u> ¶ 20.

Ignoring its obligation to submit this dispute to arbitration as it had agreed to do by

contract, PCH instead filed this court action.  Although CSI subsequently gave notice of its

intention to seek an order compelling arbitration, Exhibit B (Notice of Intention to Petition for an

Order Compelling Arbitration), PCH has failed to consent to submit these disputes to arbitration

as required by the Agreement.  Because the Federal Arbitration Act governing this diversity

action requires contractual disputes to be submitted to arbitration where the contract contains a

written arbitration clause, CSI respectfully requests this Court to issue an Order to Compel

Arbitration and to Stay Proceedings.

## <u>ARGUMENT</u>

In this case, the Agreement containing the arbitration clause is a binding contract between

the parties.  Ex. A ¶ 17.  Because the Federal Arbitration Act governs the Agreement, and

because CSI has not waived its right to enforce the arbitration agreement,[2] this Court should enter

an Order compelling arbitration and staying these proceedings.

---

[2]  In its first affirmative defense set forth in its Answer to the Complaint, CSI stated as
follows:

Plaintiff's claims are barred because the parties expressly agreed to
arbitrate all disputes arising under the Administrative Service Agreement.  Neither
the filing of this Answer nor the counterclaim shall be construed as substantially
invoking the litigation process so as to waive Defendant's right to compel
arbitration.

Ans. to Compl. [Document 4] at 5.  Indeed, CSI stated its intention to petition the District Court
for an Order Compelling Arbitration.  <u>Id.</u> at 5, n. 1.

2

## I.    THE FEDERAL ARBITRATION ACT APPLIES.

The Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 1 et seq., applies to any "contract evidencing a transaction involving commerce" which contains an arbitration clause.  9 U.S.C. § 2.  The FAA was enacted "to overcome courts' refusals to enforce agreements to arbitrate." Allied-Bruce Termini Cos. V. Dobson, 513 U.S. 265, 270 (1995).  "Section 2 [of the Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id.  Moreover, "[the] Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25.  As a result, when the FAA and governing state law conflict, the FAA, with its strong preference for the enforcement of arbitration agreements, governs.  See id.; see also Owen-Williams v. BB&T Investment Services, Inc., Civil Action No. 06-0948-CKK (D.D.C. 1996) (J. Kollar-Kotelly).

Section 2 of the Act provides that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA applies where there is a valid arbitration agreement and the underlying dispute is arbitrable.  Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 473 (5th Cir. 2002).

The FAA requires that the Court apply federal substantive law where the arbitration agreement is connected to a transaction involving interstate commerce.  State Farm Mut. Auto. Ins. Co. v.

Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000); see also Wright & Miller, Federal Practice and
Procedure § 3569, at 173 (1984) ("[I]n a diversity suit . . . , the substantive rules contained in the
[Federal Arbitration] Act, based as it is on the commerce and admiralty powers, are to be applied
regardless of state law.").

Here, there is no dispute that Agreement involves interstate commerce.  PCH is a citizen
of the District of Columbia.  Compl. ¶ 3.  CSI is a citizen of Alabama.  Id. ¶ 4.  Under the
Agreement, CSI was providing from Alabama various administrative services for PCH's liability
insurance programs.  Id. ¶ 7 Because the arbitration agreement was connected to these services
involving interstate commerce, federal substantive law applies.

## II.    THE ARBITRATION CLAUSE REQUIRES THE ARBITRATION OF THE DISPUTES AT ISSUE IN THIS ACTION.

Under the FAA, state law is applicable only "if that law arose to govern issues concerning
the validity, revocability, and enforceability of contracts generally."  Perry v. Thomas, 482 U.S.
492, n. 9 (1987).  Thus, state courts may, without violating the Act, decline to enforce arbitration
clauses on the basis of generally applicable contract defenses, such as fraud, duress, or
unconscionability.[3]  Otherwise, however, the FAA preempts state law to the extent that it treats
arbitration agreements differently from other contracts.  Circuit City v. Adams, 532 U.S. 105,
119 (2001).

―――――――――――――――――

[3]  District of Columbia law states:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract.

D.C. Code § 16-4406(a).

Here, there is no dispute as to the validity, the revocability, or the enforceability of the Agreement.   Here, by Plaintiff's own admission, "PCH entered into an Administrative Service Agreement with CSI."  Compl. ¶ 7.  Moreover, PCH specifically refers to this written Agreement and attaches a copy of the same to its Complaint.  Ex. A (attached to Compl.).  Paragraph 17 of the Agreement sets forth the arbitration clause.  It states that "any dispute regarding <u>any aspect</u> of [the] Agreement" may be submitted to arbitration.  Ex. A ¶ 17 (emphasis added).  Because the parties have agreed to arbitrate disputes involving "any aspect" of the Agreement, <u>id.</u>, the disputes at issue in this action fall squarely within the scope of the Agreement's arbitration clause.

Thus, the only true question is whether the phrase "may be submitted to binding arbitration," <u>id.</u>, "creates a duty for the parties to arbitrate the [matters in dispute]."  <u>AT&T Technologies v. Communication Workers</u>, 475 U.S. 643, 649 (1986).  In answering this question, the Supreme Court has directed district courts to adhere to the following principle:

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

<u>Id.</u> at 650 (citations and internal quotation marks omitted).  Moreover, "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  <u>Id.</u>  Stated otherwise, where the FAA applies, any ambiguities in an arbitration clause are to be resolved in favor of arbitration.  <u>See id.</u>

Preliminarily, the arbitration clause at issue in the Agreement is most broad.  It states:

17. **<u>Arbitration</u>**.  Any disputes concerning <u>any aspect</u> of this Agreement may be submitted to binding arbitration.  The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

Ex. A ¶ 17 (emphasis added).  Applying the Supreme Court's <u>AT&T</u> test, the arbitration clause here lacks any express provision which excludes a particular matter from arbitration.  In the absence of "forceful evidence of a purpose to exclude the claim[s] from arbitration," <u>AT&T</u>, 475 U.S. at 650, the arbitration clause set forth in Paragraph 17 is enforceable.

Moreover, Courts which have specifically considered arbitration clauses similar to the one  at issue here have concluded that such clauses require the submission of the disputes to mandatory arbitration.  California – cited as the choice of law provision in the Agreement – in particular has reached this conclusion on several occasions.

In <u>Service Employees International Union, Local 18 v. American Building Maintenance Co.</u>, 29 Cal. App. 3d 356, 105 Cal. Rptr. 564 (1972), the Court considered an arbitration agreement which provided in pertinent part that "the issue in dispute *may* be submitted to an impartial arbitrator."  <u>Id.</u> at 358.  Reasoning that the parties could always elect consensual arbitration without a contract provision, the Court concluded that interpreting the arbitration agreement to require only consensual arbitration would make the provision of little purpose.  <u>Id.</u>  Accordingly, the Court interpreted the clause to require mandatory arbitration.  <u>Id.</u>

In <u>Pacific Gas & Electric Co. v. Superior Court</u>, 15 Cal. App. 4th 576, 19 Cal. Rptr. 2d 295 (1993), the Court reached a similar conclusion.  There, a contract dispute arose between Pacific Gas & Electric and Anacapa Oil Corporation over an agreement to purchase natural gas. <u>Id.</u> at 583.  The agreement required arbitration for certain types of disputes, but also provided:

6

> [I]n addition to those disputes which are required to be arbitrated under the provisions hereof [including such things as market price], any other dispute . . . arising between Buyer and Seller under any provision hereof which cannot be settled by the parties within a reasonable time *may be submitted by either party to arbitration* . . .

Id. (emphasis added).

Based on the use of the word "may" in the arbitration agreement, Anacapa argued that arbitration of "any other dispute[s]" was permissive, as opposed to the mandatory arbitration of disputes regarding market price. Id. at 595. The Court, however, rejected this interpretation. Relying on Service Employees, the Court held that the clause "may be submitted by either party to arbitration" signified the right of either party to invoke mandatory arbitration. Id.

In Erickson v. Aetna Plans of California, Inc., 71 Cal. App. 4th 646, 84 Cal. Rptr. 2d 76 (Cal. Ct. App. 1999), the California Court of Appeals considered an arbitration provision in an agreement between an individual and his HMO. Id. at 649. The agreement outlined the procedure for filing a grievance and the subsequent hearing before a grievance panel, after which the panel would recommend a resolution. The agreement further provided that, if an individual was not satisfied with the proposed resolution, that person "may request binding arbitration." Id. at 649. After discussing a number of cases, including Service Employees and Pacific Gas & Electric, the Court concluded: "Applying these decisions, and keeping in mind the policy . . . favoring construction of agreements in favor of arbitration, we conclude the provision in this case should be interpreted to require arbitration rather than merely to permit it." Id. at 657 (emphasis added); see also Johnson v. Hydraulic Research and Manufacturing Co., 70 Cal App. 3d 675, 681, 139 Cal. Rptr. 136,  (Cal. Ct. App. 1977) (stating that "the use of the word 'may' does not mean that a party could choose to skip the arbitration process and litigate in court instead").

7

California's approach in favoring the enforcement of arbitration agreements mirrors that of the FAA, the District of Columbia,[4] and the State of Alabama.[5]

The arbitration clause in the Agreement provides, "Any disputes concerning any aspect of this Agreement may be submitted to binding arbitration."  Exhibit A ¶ 17.   Interpreting this phrase in light of the case law discussed above, the use of the word "may" must be interpreted to require mandatory arbitration.  Both PCH and CSI already had the right to engage in consensual arbitration.  To simply restate this elementary principle would "amount to no more than a barren recital that the parties might in the future agree to arbitrate a dispute." Service Employees, 29 Cal. App. 3d at 358.  Such an interpretation makes little sense.  Instead, the reasonable interpretation of this phrase can only mean that either party has the right to invoke mandatory arbitration.  Given this realty, the absence of any express provision with the arbitration clause excluding any particular matter from arbitration, and CSI's invocation of its right to arbitrate, this

---

[4]  In Lopata v. Coyne, 735 A.2d 931, 936 (D.C. 1999), the Court of Appeals wrote that "[u]pon a finding of the existence of an enforceable arbitration clause, a presumption in favor of arbitration attaches."  Id.  This presumption "is essentially a generalized inference of the parties' intent; courts will presume that an arbitration clause agreed upon by the parties was intended to foreclose judicial involvement in their disputes."  Id.

[5]  Alabama law also favors a presumption of arbitration.  See Kenworth of Mobile, Inc., v. Dolphin Line, Inc., No. 1051643, 2008 Ala. LEXIS 18, at *28 (Ala. Jan. 25, 2008) (stating that "[i]n interpreting an arbitration provision, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or allegation of waiver, delay, or a like defense to arbitrability'") (quoting The Dunes of GP, L.L.C. v. Bradford, 966 So.2d 924, 927 (Ala. 2007)); Carroll v. W.L. Petrey Wholesale Co., 941 So.2d 234 (Ala. 2006) (noting that "The Federal Arbitration Act creates a strong presumption in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability'") (quoting Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1083 (Ala. 2005)).

Court should find that the Agreement mandates arbitration of the disputes at issue in this action and issue an Order compelling arbitration and staying these proceedings.

## CONCLUSION

In the Agreement, both PCH and CSI agreed that "[a]ny disputes concerning any aspect of this Agreement may be submitted to binding arbitration." Interpreting this Agreement in accordance with the intent of the parties, federal and state law, and their policies favoring arbitration, this Court should find that the Agreement mandates arbitration of the disputes at issue in this suit and grant CSI's Motion to Compel Arbitration and to Stay Proceedings.

_____/s/_____
James M. Connolly (Bar No. 455140)
KRAMER & CONNOLLY
500 Redland Court, Suite 211
Owings Mills, Maryland 21117
Tel.: (410) 581-0070
Fax: (410) 581-1524
*Counsel for Defendant Casualty & Surety, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 7, 2008, a copy of the foregoing was mailed first class, postage prepaid, to the following person who does not receive papers via ECF:

Lewis E. Hasset, Esquire
*Morris, Manning & Martin, LLP*
1600 Atlanta Financial Center
3343 Peachtree Street, N.E.
Atlanta, Georgia 30326
*Counsel for Plaintiff PCH Mutual Insurance Company, Inc.*

_____/s/_____
James M. Connolly

E:\OFFICE\CASES\250-001\motion_compel_arbitration_memo.wpd

### PCH MUTUAL INSURANCE COMPANY, INC.
### A RISK RETENTION GROUP

### Administrative Services Agreement

This Agreement is made this _3l_ day of _March_, 2004 by and between PCH MUTUAL Insurance Company, a RISK RETENTION GROUP, a District of Columbia captive insurance company (hereinafter referred to as the "Group"), and Casualty and Surety, Inc., an Alabama domiciled corporation (hereinafter referred to as "Administrator"), to provide program administrative services for Group's liability insurance programs.

It is understood that the Group, for the consideration of fees to be paid, has retained the Administrator to perform the management and administrative services described herein in connection with the operation of the Group's liability insurance programs.

In consideration of the mutual covenants and agreements made herein, for good and valuable consideration, receipt of which is hereby acknowledged, the Administrator and the Group hereby agree to the following:

1. **Effective Date of the Agreement.** The term of this Agreement shall be for a period ten (10) years, commencing on the _3l_ day of _March_, 2004, and expiring on _March 3l_, 2014, unless otherwise canceled pursuant to the terms of this Agreement.

2. **Services of the Program Administrator.** As of the Effective date, and until canceled as provided herein, the Group hereby grants authority and responsibility to the Administrator for the development, preparation and dissemination of insurance policies, application forms, the adherence to insurance underwriting guidelines, the preparation and issuance of policies, endorsements, notices of cancellation, notices of non-renewal, notices of reinstatement, and the application of rates as approved by the Group's Board of Directors. All services provided by the Administrator hereunder shall be at the direction and under the supervision of the Group. The Group retains all powers not expressly or by necessary implication delegated to the Administrator by this Agreement.

    a. In the performance of its services, Administrator shall observe and comply with all applicable laws, regulations and ruling of applicable governmental agencies, bureaus or commissions.

    b. Administrator shall maintain operations facilities and the staffing of such facilities and shall maintain financial and underwriting data and reports consistent with being the Group's captive administrator.

Initials _____

EXHIBIT
A
08-0282-CKK

CSI 0032

   c.  Administrator shall, at all times, act as an independent contractor. Nothing contained herein shall be construed to create an employer/employee relationship, partnership or join venture between the Group and Administrator.

   d.  Administrator warrants and represents that it is in good standing in its state of domicile, as an ongoing obligation throughout the term of this Agreement, shall take all necessary steps to remain in good standing.

3. **Exclusive Services.** The Group shall employ exclusively the services of the Program Administrator during the term of this Agreement, and any extensions thereto. Such exclusive representation shall mean that the Group shall not solicit or employ any other person(s) or entity who provides similar services either directly or indirectly.

4. **Cooperation.** The Program Administrator shall at all times cooperate with the Group's other service contractors and third-party administrators assigned to carry out the policies of the Group's board of directors, and the claims service administrator.

   a.  **Limitations.** The Program Administrator's authority to represent the Group is expressly limited as described herein, and shall be in accordance with such instructions as from time to time may be given by the Group's board of directors, or its authorized representative.

5. **Receipt of Funds: Accounts.** The Administrator shall have responsibility to bill, collect, remit and account for premiums under this program.

6. **Expenses.** The Administrator shall pay all expense incurred in connection with the underwriting, issuing and servicing or business written under this Agreement, including but not limited to the following:

   b.  Cost of printing and producing policies, endorsement, notices, records, and reports al all documents required to fulfill the Administrator's obligations under this agreement.

The Administrator shall be reimbursed by the Group for assessments including fees and assessments of rating, service or actuarial organizations incurred on behalf of the Group in connection with the business underwritten in the Group's program.

7. **Books, Accounts, and Records.** The Group shall be entitled to receive true and correct financial and document records for payments authorized to the Group's reinsurer(s) and reinsurance bordereaux related thereto (collectively, the "Business Records"). All Business Records, shall be maintained at all times in accordance with regulatory practices. All Business Records shall be subject, during Administrator's normal business hours, to inspection, duplication, and/or audit by a duly authorized representative of the Group and

Initials ____

CSI 0033

shall be made available for inspection at the Administrator's offices, following the expiration or termination of this Agreement.

All records related to the business of the group as defined above or elsewhere referred to in this Agreement, including but not limited to underwriting, policy, and financial records, and account files, (collectively the "Underwriting Files") shall be the property of the Group and shall be subject, during normal business hours of he Administrator, to inspection, duplication, and/or audit by a duly authorized    representative of the Group and/or    representative of any authorized reinsurer or regulatory  agency.  All original Underwriting Files shall be promptly delivered to the Group upon request and promptly following the expiration or other termination of this Agreement.  Administrator shall be entitled to a complete copy of all data the Administrator has provided at Administrator's sole expense.   The obligations of Administrator under this Agreement shall not be discharge, altered or modified by the delivery of any original Underwriting Files to the group.

8.  **Compensation:**  In consideration of the services which shall be performed by the Administrator, the Group shall pay to the Administrator a fee of ten (10%) of gross earned premium payments received by or on behalf of the Group from the participants for liability insurance coverage.

    a.  **Payment Schedule.** Fees are collected by the marketing manager with commissions deducted and remitted to Program Administrator. Program Administrator remits to Group net insurance premiums and 100% of capital contributions.

    b.  **Refunds of Premium Payments.** If the Group shall for any reason (other than for the purpose of declaring a dividend or surplus) refund any gross premium payments made by a participant, then the Administrator shall refund the pro rata portion of its fee on such premium, and shall forfeit, refund and/or rebate to the Group said pro rata portion of its fee received by Administrator on account thereof within forty-five *(45)* days of Administrator receiving notice of the refund

9.  **Termination Agreement.**   Subject to the provisions contained in paragraph 4, this Agreement may additionally be terminated as follows:

    a.  **Termination by Mutual Consent.** This Agreement may additionally be terminated upon the mutual written consent of the parties.

    b.  **Termination for Cause.** The Group may terminate this Agreement immediately for cause due to breach of conduct by the Administrator, its employees, agents and/or brokers: (1) for failure to comply with the terms of this Agreement; (2) for suspected fraud (as determined by the Group); (3) for gross negligence in the performance of its duties and responsibilities (as determined by the Group); (4) for willful and wanton misconduct (as determined by the Group); *(5)* for failure to be properly licensed  to be able to perform the duties and responsibilities of a

Initials _____

CSI 0034

Administrator under this Agreement; and (6) for any improper, immoral, disreputable or illegal acts which, as determined by the Group, brings discredit to the Group or otherwise causes the Group to be viewed negatively by the public or in a false light.

    i. In the event of termination under paragraph 5(b), the Administrator's compensation shall cease, effective the date of termination. Neither Administrator nor any employee, agent, broker, person or corporation claiming through Administrator shall have any claim against the Group for compensation of any nature, except for compensation which in the usual and lawful course of business had fully accrued and become payable to Administrator prior to the effective date of termination.

c. In the event the Agreement is voluntarily terminated for reasons other than those set forth in paragraph 4(b), then the following provisions shall apply;

    i. If termination is by mutual agreement of the parties:
        a. The Administrator shall be paid any gross earned premium fees owed up to the date of mutual termination.
        b. If the termination is unilaterally initiated by the Group, then the Administrator shall be entitles to his fee on all business placed in the Group from the date of termination until the normal expiration of this contract.

    ii. The obligations of each party to the other specified in the Agreement shall survive with reference to business in force at the time of termination and shall continue to be discharge promptly.

    iii. The Administrator's records or knowledge of name of policyholders and expiration dates shall not be disclosed by the Administrator to any agent, broker, or other person, unless required by law, nor used by the Administrator for the purposes of solicitation.

10. **Hold Harmless Agreement.** The Administrator, its employees, agents, brokers and representatives, shall hold the Group harmless from any and all liabilities, injuries or damages, whether for personal injury, property damage, or for any other occurrence or injury which may result from the negligent, intentional or otherwise wrongful acts, errors, or omissions of the Administrator, its employees, agents, brokers and representatives or anyone else acting on behalf of the Administrator. The Administrator shall indemnify and hold the Group harmless from any and all causes of action, claims or demands arising out of the Administrator's performance of its duties under this Agreement, or anyone acting on behalf of the Administrator, except such actions as may have been specifically directed by the Board of Trustees of the Group or by and through its properly authorized representative.

Initials

CSI 0035

11. **Retention of Coverage.** The Administrator acknowledges that the Group has the right to terminate members under its Bylaws and other agreements, and it shall assist and cooperate with those terminations should the Group seek the assistance of the Administrator.

12. **Group Records.** On termination of this Agreement, Administrator shall promptly surrender to the Group all records that in any way pertain to the business of the Group or to any of its members, including sales manuals, expiration records, invoice copies, Group member lists, and other written, printed, or computer-stored information pertaining to the Group. It is agreed that the Group owns all records that in any way pertain to the business of the Group.

13. **Fee Modification.** The fee rate specified in the Agreement may be modified by the Group, without previous notice, to conform legally with the fees prescribed by any District of Columbia law or regulation relating to any insurance products or offerings of the Group.

14. **Injunction.** In the event that the Administrator, its employees, agents, brokers and/or representatives, attempt to breach the terms of this Agreement, the Group shall, in addition to its rights and remedies available to it at law or in equity, have the right to seek an injunction against the Administrator to enforce the provisions of this Agreement. The Administrator agrees to be responsible for and to reimburse the Group for any attorney's fees and costs associated with any legal action taken by the Group to enforce the terms of this Agreement.

15. **Assignment.** No assignment of this Agreement or fees earned or accrued under this Agreement shall be valid unless consented to in writing by the Group.

16. **Insurance/Fidelity Bond.**

   a. **Insurance.** The Administrator shall agree to obtain and carry errors and omissions insurance applicable to its activities on behalf of the Group in an amount equal to one million dollars ($1,000,000.00) single limit liability; and two million dollars ($2,000,000.00) aggregate liability. A copy of the certificate of said insurance shall be delivered to the Group at the beginning of the term of this Agreement. The Administrator shall give the Group thirty (30) day's notice prior to the cancellation of any such insurance.

17. **Arbitration.** Any disputes concerning any aspect of this Agreement may be submitted to binding arbitration. The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

18. **Waiver.** Failure to enforce any of the provisions of this Agreement shall not constitute a waiver of such provision or any other provision of this Agreement.

Page 5                                                              Initials _____

CSI 0036

19. **Notices.** Notices required pursuant to this Agreement shall be sent to the parties addressed as follows:

> PCH Mutual Insurance Co.,
> A Risk Retention Group
> 5101 Wisconsin Avenue N.W., Suite 500
> Washington, D.C. 20016

> Mr. David Condon, President
> Casualty and Surety of Illinois, Inc.
> 11 Willow Tree Court
> Elmhurst, IL 60126

16. **Entire Agreement.** This Agreement supersedes any and all oral or written agreements heretofore made relating to the subject matter hereof and constitutes the entire agreement of the parties relating to the subject matter hereof.

17. **Headings.** The heading in this Agreement are inserted for the convenience of reference only and shall not be a part of or control or affect the meaning of this Agreement.

18. **Further Assurances.** Each party hereto shall from time to time on or after the effective date execute and deliver to any other party hereto all such further documents as shall reasonably be requested in order to complete the relationship contemplated by the Agreement.

19. **Partial Validity.** If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extend be invalid or unenforceable, the remainder of the Agreement, or the application of such term or provision to persons or circumstance other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of the Agreement shall be valid and be enforced as written to the fullest extent permitted by law.

20. **Binding Effect and Governing Law.** This Agreement binds and benefits the parties, their permitted successors, assigns and transferee, if specifically enforceable and governed by and construed in accordance with the law of the California

21. **Superseding Agreement.** This Agreement shall supersede all other agreements entered into between the parties.

Page 6

Initials

CSI 0037

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

PCH MUTUAL INSURANCE CO.,
A RISK RETENTION GROUP

By: _~~~~~~~~ Matthew G. Harvey_
Title: _Chairman_
Address: _One Windsor Way_
_Ebensburg Pa., 15931_
Telephone: _412-364-6411_

CASUALTY AND SURETY, INC.

By: _~~~~~~~_
Title: _President_
Address: _300 Shyomel Parkway Suite 61_
_Birmingham AL 35242_
Telephone: _205-985-6713_

Page 7                                    Initials___

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PCH MUT. INS. CO., INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 2008 - 000282 CKK [Judge Colleen Kollar-Kotelly] |
| CASUALTY & SURETY, INC., | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## NOTICE OF INTENTION TO PETITION
## FOR AN ORDER COMPELLING ARBITRATION

Defendant Casualty & Surety, Inc., by its undersigned counsel, hereby notifies Plaintiff

PCH Mutual Insurance Company, Inc. that it intends to petition the United States District Court

having jurisdiction for an Order Compelling Arbitration as provided for in the Administrative

Services Agreement at issue in the above-referenced action.

James M. Connolly
*KRAMER & CONNOLLY*
500 Redland Court, Suite 211
Owings Mills, Maryland 21117
Tel.: (410) 581-0070
Fax: (410) 581-1524
*Counsel for Casualty & Surety, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2008, a copy of the foregoing was *faxed* and
mailed first class, postage prepaid, to: Robert Myers, Jr., Esquire, *Morris, Manning & Martin,
LLP*, City Center Building, 1401 H Street, NW, Suite 760, Washington, DC 20005.

James M. Connolly

E:\OFFICE\CASES\250-001\notice_intention_to_petition_to_arbitrate.wpd


EXHIBIT
B
08-0282-CKK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUT. INS. CO., INC.,          *

       Plaintiff,          *

       v.          *   Case No.: 1:08-cv-00282 CKK

CASUALTY & SURETY, INC.,        *

       Defendant.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**
**COMPELLING ARBITRATION AND STAYING PROCEEDINGS**

The Court has before it Defendant Casualty & Surety, Inc.'s Motion to Compel Arbitration and Stay Proceedings.  Having considered the merits of the Motion, and Plaintiff PCH Mutual Insurance Company, Inc.'s Opposition thereto, this Court finds the parties agreed in writing to arbitrate the dispute in question, that the claims are arbitrable, and that there is no legal constraint which renders the claims nonarbitrable.  Accordingly, it is this _____ day of _____, 2008, by the United States District Court for the District of Columbia

ORDERED, that Defendant Casualty & Surety, Inc.'s Motion to Compel Arbitration and Stay Proceedings is GRANTED; and it is further

ORDERED, that the parties shall submit their claims to arbitration; and it is further

ORDERED, that any further proceedings are STAYED pending resolution of the arbitration proceedings.

_____
Colleen Kollar-Kotelly
United States District Judge

copies to:

Robert H. Myers, Jr., Esquire
*Morris, Manning & Martin, LLP*
1401 H Street, N.W., Suite 760
Washington, D.C.  20005
*Counsel for Plaintiff PCH Mutual Insurance*
*Company, Inc.*

Lewis E. Hasset, Esquire
*Morris, Manning & Martin, LLP*
1600 Atlanta Financial Center
3343 Peachtree Street, N.E.
Atlanta, Georgia 30326
*Counsel for Plaintiff PCH Mutual Insurance*
*Company, Inc.*

Irwin R. Kramer, Esquire
James M. Connolly, Esquire
*Kramer & Connolly*
500 Redland Court, Suite 211
Owings Mills, Maryland  21117
*Counsel for Defendant Casualty & Surety, Inc.*