IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          |   |                              |
|--------------------------|---|------------------------------|
| PCH MUTUAL INSURANCE     | ) |                              |
| COMPANY, INC.            | ) |                              |
|                          | ) |                              |
| Plaintiff/Counter-Defendant, | ) |                          |
|                          | ) | Civil Action No. 08-CV-0282-CKK |
| v.                       | ) |                              |
|                          | ) |                              |
| CASUALTY & SURETY, INC., | ) |                              |
|                          | ) |                              |
| Defendant/Counter-Claimant. | ) |                           |
|                          | ) |                              |

## MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

### INTRODUCTION

Defendant/Counter-Claimant, Casualty & Surety, Inc. ("CSI"), has filed its Motion to Compel Arbitration and Stay Proceedings (the "Motion"), seeking an order compelling arbitration and staying proceedings in this case. For the reasons below, the Motion should be denied.

The parties did not agree to mandatory arbitration. Rather, the plain language of the arbitration clause, other provisions of the Administrative Services Agreement and the other evidence before this court reflect an intent to allow only permissive arbitration.

### STATEMENT OF FACTS

#### A. The Parties

PCH is a risk retention group ("RRG") domiciled in the District of Columbia. (Declaration of Edgar Blumenfeld ("Blumenfeld Decl."), ¶ 3).[1] An RRG is an entity "whose

---

[1] All declarations cited in this brief are attached to the Appendix of Declarations in Opposition to Motion to Compel Arbitration, filed herewith.

primary activity consists of assuming and spreading all, or any portion, of the liability exposure of its group members." 15 U.S.C. § 3901(4). RRGs function pursuant to the Product Liability Risk Retention Act of 1981 ("PLRRA"), Pub.L. No. 97-45, 95 Stat. 949 (1981), as amended by the Liability Risk Retention Act of 1986 ("LRRA"), Pub.L. No. 99-563, 100 Stat. 3170 (1986) (codified as amended at 15 U.S.C. §§ 3901-06 (2000)). Congress enacted the PLRRA and LRRA "to decrease insurance rates and increase the availability of coverage by promoting greater competition within the insurance industry." *Preferred Physicians Mut. Risk Retention Group v. Pataki*, 85 F.3d 913, 914 (2d Cir. 1996) (citing H.R. Rep. No. 99-865, 1986 U.S.C.C.A.N. 5303, 5304-06).

Under the LRRA, RRGs are regulated by a single chartering or "domiciliary" state and, with certain limited exceptions, are exempt from regulation by other states. *See* 15 U.S.C. §§ 3902, 3905; s*ee also Fla. Dep't. of Ins. v. Nat'l Amusement Purchasing Group, Inc.*, 905 F.2d 361, 363-64 (11th Cir. 1990) ("The authority of a non-domiciliary state to license and regulate risk retention groups is largely preempted."). Federal courts have recognized that by enacting the LRRA, Congress intended to "cloak *one state* with the power to license an insurer which will issue its policies nationwide." *Home Warranty Corp. v. Caldwell*, 777 F.2d 1455, 1487 (11th Cir. 1985) (emphasis added); *see also, e.g., Primeguard Ins. Co., Inc. v. Low*, 113 Fed. Appx. 750, 751 (9th Cir. 2004) ("Taken as a whole, 15 U.S.C. § 3902 precludes non-domiciliary state laws that attempt to regulate insurance coverage provided by a risk retention group to its members."); *Preferred Physicians*, 85 F.3d at 915 ("Both direct and indirect regulation of RRGs by non-domiciliary states are forbidden.").

PCH is domiciled in the District of Columbia and writes liability insurance in over thirty states, including the District of Columbia.[2] (Blumenfeld Decl., ¶ 3). As PCH's domiciliary jurisdiction, the District of Columbia has plenary regulatory authority over PCH. *See* 15 U.S.C. §§ 3902, 3905. As noted above, and as distinguished from traditional insurance, the insurance departments of other jurisdictions have little regulatory authority over PCH.

CSI is an insurance broker based in Alabama. (CSI's Brief, pp. 1, 4). On March 18, 2008, well after this suit was filed, CSI filed with the California Secretary of State to qualify to do business in California. (Declaration of Tanya M. Thompson ("Thompson Decl."), ¶ 3). PCH has never sold policies or otherwise conducted business in California or Alabama. (Blumenfeld Decl., ¶¶ 3-5).

**B. The Agreement**

As of March 31, 2004, PCH and CSI entered into an Administrative Services Agreement (the "Agreement"), under which CSI was to act as PCH's managing general underwriter. (Mot. to Compel, Ex. A). Specifically, CSI was responsible for "the development, preparation and dissemination of insurance polices, application forms, the adherence to insurance underwriting guidelines, the preparation and issuance of policies, endorsements, notices of cancellation, notices of non-renewal, notices of reinstatement, and the application of rates as approved by [PCH's] Board of Directors." (Agreement, ¶ 2). As PCH's agent, CSI owed PCH a "fiduciary duty." *See Gov't of Rwanda v. Johnson*, 409 F.3d 368, 372 (D.C. Cir. 2005); *Mele v. First Colony Life Ins. Co.*, 1990 WL 39735 (D.D.C. Mar. 30, 1990) (insurance agent owes principal a fiduciary duty); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C. 1984) (agent owes fiduciary duty to principal).

---

[2] For ease of reference, in this brief, the word "state" includes the District of Columbia.

The adjudication of CSI's Motion requires analysis of three provisions of the Agreement. First is the arbitration clause cited by CSI, which states as follows:

> Any disputes concerning any aspect of this Agreement *may* be submitted to binding arbitration. The prevailing party *shall* be entitled to recover all costs incurred, including reasonable attorney's fees.

(*Id.*, ¶ 17) (Emphasis added).

Second, the Agreement authorizes judicial relief as follows:

> In the event the Administrator [CSI], its employees, agents, brokers, and/or representatives, attempt to breach the terms of this agreement, the Group [PCH] shall, in addition to its rights and remedies available to it at law or in equity, have the right to seek an injunction against the Administrator to enforce the provisions of the Agreement. The Administrator agrees to be responsible for and to reimburse the Group for any attorney's fees and costs associated with any legal action taken by the Group to enforce the terms of this Agreement.

(*Id.*, ¶ 14).

Third, the Agreement includes a clause that CSI cites as a choice of law clause. That clause provides that "[t]his Agreement binds and benefits the parties, their permitted successors, assigns and transferee, if specifically enforceable and governed by and construed in accordance with the law of the [sic] California." (*Id.*, ¶ 20).

### C. Underlying Claims and Procedural History

On January 22, 2008, PCH filed a four-count complaint against CSI in the Superior Court of the District of Columbia. (Compl., Case No. 08-00499). Count I alleges breach of contract on the basis that CSI failed to timely issue policies pursuant to the Agreement and the Underwriting Guidelines. (Compl., ¶¶ 22-25). Count II alleges breach of contract on the basis that CSI failed to be properly licensed as a broker or non-resident producer in the District of Columbia, as required by paragraph 2.a of the Agreement. (*Id.*, ¶¶ 26-30). Count III alleges breach of

# 1911678v10

fiduciary duty on the basis that CSI wrongfully diverted funds from PCH by placing collected premiums in interest-bearing accounts and retaining all interest earned on funds without consent from PCH.  (*Id.*, ¶¶ 31-35).  Count IV alleges unjust enrichment on the basis that CSI was unjustly enriched by its retention of interest earned on collected premiums.  (*Id.*, ¶¶ 36-39).

On February 19, 2008, CSI removed the case to this Court.  CSI filed its Answer and Counterclaim on February 25, 2008, alleging that PCH's termination of the Agreement constitutes a breach of contract.  (Contercl., ¶¶ 1-7).  CSI filed the Motion on March 7, 2008, and on March 9, PCH filed its Demand for Jury Trial.

## ARGUMENT AND AUTHORITIES

### A. The Test for Arbitrability

CSI contends that the Motion is governed by the Federal Arbitration Act (the "FAA"). (Memorandum in Support of CSI's Motion to Compel Arbitration and Stay Proceedings ("CSI's Brief"), pp. 3-4).  PCH agrees.  PCH is based in the District of Columbia, CSI is based in Alabama and CSI was to handle PCH's insurance business in the states in which PCH did business.  Therefore, it is clear that the Agreement involves interstate commerce and that the FAA applies.  9 U.S.C. § 1, *et seq.*

Under the FAA, the arbitrability of a particular dispute is decided under a two-part inquiry.  *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Systems, Inc.*, 448 F.Supp.2d 64, 68 (D.D.C. 2006).  First, the court decides whether the parties entered into a valid and enforceable arbitration agreement.  *Id.*  If so, the inquiry becomes whether the arbitration agreement encompasses the claims raised in the complaint.  *Id.*

The proper standard for resolving a motion to compel arbitration is the same as the standard for resolving a motion for summary judgment under Federal Rule of Civil Procedure

# 1911678v10

56. *Wolff v. Westwood Mgt., LLC,* 503 F. Supp. 2d 274, 278 (D.D.C. 2007); *Dowley v. Dewey Ballantine, LLP,* 2006 WL 1102768, *2-3 (D.D.C. 2006); *Booker v. Robert Half Int'l, Inc.,* 315 F. Supp.2d 94, 99 (D.D.C. 2004), *affirmed,* 413 F.3d 77 (D.C. Cir. 2005). The movant must show that the pleadings and evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wolff,* 503 F. Supp. 2d at 278. "In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the non-movant's statements should be accepted as true and all inferences should be drawn in the non-movant's favor." *Booker,* 315 F. Supp. 2d at 99. If the determination of arbitrability requires the resolution of disputed facts, the matter must be referred to a jury. 9 U.S.C. § 4. As noted, PCH timely filed a jury demand.

Therefore, the court must decide whether PCH or CSI should prevail on arbitrability as a matter of law. If neither should so prevail, the case must be referred to a jury. The record supports a judgment that this dispute is not subject to mandatory arbitration. At the very least, a jury question is presented.

## B. Application of FAA

The FAA does not mandate the arbitration of all contracts. *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 474-479 (1989). Rather, arbitrability is determined under state contract law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Bailey v. Fed. Nat'l Mtg. Ass'n,* 209 F.3d 740, 746 (D.C. Cir. 2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986). "Arbitration under the [FAA] is a matter of consent,

6

# 1911678v10

not coercion," and the FAA serves only to pre-empt state law that treat agreements to arbitrate different from other contracts. *Volt Info. Sciences,* 489 U.S. at 479.

For that reason, CSI's argument that any ambiguities must be construed in favor of forced arbitration is erroneous. (CSI's Brief, p. 3). Rather, whether the parties intended to mandate forced arbitration is decided like any other contract issue under state law. *See First Options,* 514 U.S. at 944; *Volt,* 489 U.S. at 474-479; *Bailey,* 209 F.3d at 746 (ordinary state law principles applied to whether an agreement to arbitrate any issues). Any presumption in favor of arbitrability applies only to the "scope" of a mandatory arbitration clause after an enforceable agreement to arbitrate is found. *First Options,* 514 U.S. at 945 (presumption in favor of arbitrability arises only "when the parties have a contract that provides for the arbitration of at least some issues"). As stated in *Campbell v. General Dynamics Govt. Systems Corp.,* 407 F.3d 546, 552 (1st Cir. 2005), "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." (Emphasis in original). *See also 2200 M Street LLC v. Mackell,* 940 A.2d 143, 151 (D.C. 2007) (presumption in favor of arbitrability applies only "[u]pon a finding of the existence of an enforceable agreement to arbitrate").

Accordingly, this court must determine whether the parties agreed to require mandatory arbitration under state contract law. As the movant seeking to stay this case and force arbitration, CSI bears the burden of proof. *See Bailey,* 209 F.3d at 746; *Wolf,* 503 F. Supp. 2d at 278; *Booker,* 315 F. Supp. 2d at 99. To satisfy its burden of proof, CSI relies solely on the Complaint and the Agreement.

### C. Choice of State Law

A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941); *Elemary v. Holzmann A.G.,* 533 F.Supp.2d 144, 155 n.3 (D.D.C., Feb. 6, 2008). CSI argues that the Agreement contains a choice of law clause mandating the application of California law. (CSI's Brief, p. 6). That is debatable. The purported choice of law clause states as follows:

> This Agreement binds and benefits the parties, their permitted successors, assigns and transferee, if specifically enforceable and governed by and construed in accordance with the law of the [sic] California.

By its own terms, Paragraph 20 of the Agreement does not mandate the application of California law. Rather, it conditions the rights of successors and assigns on the enforceability of their successor rights under California law.

Moreover, even assuming that the Agreement purports to incorporate California law, it is not enforceable in this case. District of Columbia courts will enforce a contractual choice of law provision only if it bears a "reasonable relationship with the state specified." *Elemary,* 533 F. Supp. 2d at 155 n.3; *Norris v. Norris,* 419 A.2d 982, 984 (D.C. 1980). Neither the parties nor the Agreement has a reasonable connection to California. For example, no portion of the Agreement was to be performed in California, neither of the parties is based in California, PCH does not do business in California and is not qualified to do so, and CSI did not even qualify to do business in California until March 18, 2008, well after the filing of its Motion. (Thompson Decl., ¶¶ 3-5).

Because the District of Columbia will not enforce the Agreement's choice of law clause, the District's general choice of law rules apply. District of Columbia courts apply a "constructive blending" of the governmental interests analysis and most significant relationship

8

test. *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193-194 (D.C. Cir. 1999); *Elemary,* 533 F. Supp. 2d at 155 n.3. The court may weigh the factors listed in the Restatement (Second) of Conflict of Laws § 188: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Elemary,* 533 F. Supp. 2d at 155 n. 3. As a practical matter, "assessments using this multiplicity of factors frequently prove inconclusive, and when this occurs, District of Columbia courts apply District law for efficiency's sake." *Stephen A. Goldberg Co.*, 170 F.3d at 194.

The applicable factors militate heavily in favor of District of Columbia law. PCH is based in the District of Columbia, and CSI was acting as a fiduciary for a principal located in the District of Columbia. (Blumenfeld Decl., ¶ 3). While CSI is based in Alabama, PCH has never sold policies in Alabama. (*Id.*, ¶ 5). CSI's performance was spread across Alabama and the states in which it acted as PCH's fiduciary, including the District of Columbia. *See* Restatement (Second) of Conflict of Laws, § 188, comment (e) at 580 (the place of performance bears little weight under the significant relationship test when performance is spread across two or more jurisdictions).

In any event, these factors merely begin the analysis, because "[t]he District . . . inquires independently into which jurisdiction has the greatest interest in the subject." *Stephen A. Goldberg Co.,* 170 F.3d at 194-195. Alabama has no interest in this dispute. While CSI is located there, PCH is not located there and has never sold policies or transacted business there. (Blumenfeld Decl., ¶ 5). In reality, each of the states where CSI sold policies for PCH has a greater governmental interest than Alabama.

# 1911678v10

Conversely, the District of Columbia's governmental interest goes to the core of both the federal scheme for regulating risk retention groups and the District of Columbia's implementation of that scheme. As a risk retention group, PCH is regulated by the District of Columbia Department of Insurance, Securities and Banking (the "DC Insurance Regulator"). Unlike traditional insurance companies, which are regulated by any state where licensed, a risk retention group is regulated only by its domiciliary state. Regulation by other states is pre-empted by federal law. *See* 15 U.S.C. § 3902. PCH is subject to extensive statutes and regulations in the District of Columbia. *See* D.C. Code §§ 31-4101 to 31-4112; CDCR 26-4015. Therefore, the primacy of the District's interest results from both District of Columbia and federal law.

The interest of the District is not merely theoretical in this case. The DC Insurance Regulator expressed concerns about the Agreement and CSI's licensure status, which are both at issue in this case. (Compl. ¶ 3; Ex. C). Weighing these factors, the District of Columbia has the strongest governmental interest, and efficiency interests favor the application of District of Columbia law. *See also Goldberg*, 170 F.3d at 194-95 (holding where New York and the District both have an interest in the matter, the District's law applies).

**D. The Parties Did Not Agree to Mandatory Arbitration.**

Under District of Columbia law, the key inquiry in construing a contract is to determine the parties' intent. *See Howard Univ. v. Lacy*, 828 A.2d 733, 737 (D.C. 2003), *rehearing granted in part on other grounds*, 833 A.2d 991 (D.C. 2003). Arbitration may be mandated only when the parties intended to require forced arbitration. *Bailey*, 209 F.3d at 746. An alleged intention to be bound to arbitration "must be closely examined" with the burden of proof on the movant. *Id.* Any ambiguity is to be construed against the drafter. *Forrest v. Verizon*

*Commc'ns., Inc.*, 805 A.2d 1007, 1013-1014 (D.C. 2002); *Dano Resource Recovery, Inc. v. District of Columbia*, 620 A.2d 1346, 1353 (D.C. 1993). *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (rule that contract construed against drafter applied to arbitration clause). In our case, the Agreement was drafted by CSI. (Declaration of Jon Harkavy, ¶ 3).

The Agreement provides that disputes "may" be submitted to arbitration. The word "may," contrary to "shall," connotes that the indicated action is permissive, not mandatory. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005); *Thompson v. Clifford*, 408 F.2d 154 (D.C. Cir. 1968); *DeSipio v. DeSipio*, 186 A. 2d 624 (D.C. Mun. App. 1962). *See also Ace Constructors, Inc. v. U.S.*, 70 Fed. Cl. 253 (2006), (the "court honors this distinction [between "shall" and "may"]" in a contract dispute), *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007).

In our case, the first sentence of the arbitration clause uses "may," while the second sentence uses "shall." When "may" and "shall" are used in the same provision, the permissive connotation of "may" is even more pronounced. *See Brown v. Hecht Co.*, 137 F.2d 689, 693-694 (App. D.C. 1943) ("It is recognized that the use of 'may' and 'shall' in one sentence implies that each word is used in its own ordinary sense and not in the ordinary sense of the other."), *rev'd on other grounds sub nom, Hecht Co. v. Bowles*, 321 U.S. 321 (1944); *Ballou v. Kemp*, 92 F.2d 556, 560 (App. D.C. 1937) (use of "may" and "shall" in same chapter of legislation supported application of ordinary meaning).

This court has applied this principle of contractual construction to demands for arbitration. In *Group Hospitalization and Medical Svcs., Inc. v. Stubbs*, 1990 WL 183576 (D.D.C. 1990), the court held that the use of the word "may" in an arbitration clause rendered

11

arbitration permissive rather than mandatory. *See also Meshel v. Ohev Sholom Talmud Torah,* 869 A.2d 343, 361 (D.C. 2005) (use of word "shall" supported mandatory arbitration).

CSI's Motion rests largely on a purported presumption under the FAA favoring arbitration. (CSI's Brief, p. 5). CSI misapprehends that presumption. As noted previously, the Supreme Court and this Circuit have made clear that any presumption in favor of arbitrability applies, not to whether a party has agreed to arbitrate, but solely to the scope of arbitrable disputes if a binding agreement to arbitrate in fact exists. *See First Options,* 514 U.S. at 945. *Bailey,* 209 F.3d at 746. *Accord: Campbell,* 407 F.3d at 552.[3]

Aside from the use of the word "may," other aspects of the arbitration clause militate against forced arbitration. For example, the arbitration clause does not identify the arbitrator or a method for choosing the arbitrator. While the court has the power to designate an arbitrator, 9 U.S.C. § 5, the fact that the parties left no clue is evidence that the parties did not intend to force arbitration. Similarly, the arbitration clause does not designate a place of arbitration. While a court has the power to compel arbitration within its own district, 9 U.S.C. § 4, the absence of a designation of place is evidence that the parties did not intend a forced arbitration.[4]

Not only does the arbitration clause itself support the view that any arbitration would be permissive, other portions of the Agreement are inconsistent with mandatory arbitration. Paragraph 14 of the Agreement accords PCH the right to seek an injunction, "in addition to its

---

[3] Because cases cited by CSI in support of the presumption involved disputes over the scope of clauses admittedly mandating arbitration of at least some issues, they are inapplicable here. *Citing Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *AT&T Tech., Inc. v. Communication Workers,* 475 U.S. 643, 649-650 (1986); *Lopata v. Coyne,* 735 A.2d 931 (D.C. 1999) (presumption in favor of arbitrability applies only "[u]pon a finding of the existence of an enforceable arbitration clause").

[4] Given the Agreement's silence on the designation of an arbitrator and the place of arbitration, any award compelling PCH to arbitrate should identify the arbitrator. Because any arbitration must occur in this district, the arbitrator should reside in the District of Columbia and should be experienced in the regulation of insurance companies.

# 1911678v10

rights and remedies available to it at law or in equity." Paragraph 14 also provides that, if PCH prevailed, it would be entitled to attorneys' fees. This language, which expressly permits judicial intervention, is inconsistent with mandatory arbitration and would render redundant the attorneys' fees provisions of Paragraphs 14 and 17.

The most reasonable construction of the Agreement is that arbitration is permissive, not mandatory, but that if the parties agree to arbitrate, the loser pays the winner's attorneys' fees. Conversely, if the parties do not agree subsequently to arbitrate, they may go to court. If PCH goes to court and prevails, it would be entitled to attorneys' fees.

## CONCLUSION

For the foregoing reasons, CSI's Motion to Compel Arbitration and Stay Proceedings should be denied.

This 7th day of April, 2008.

MORRIS, MANNING & MARTIN, L.L.P.

/s/

Robert H. Myers, Jr.
D.C. Bar No. 179242
1401 H Street NW
Suite 760
Washington, D.C. 20005
Tel: (202) 898-0011
Fax: (202) 408-5146

Lewis E. Hassett
Georgia Bar No. 336140
Admitted *Pro Hac Vice* 03/04/2008
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Tel: 404-233-7000
Fax: 404-365-9532

Attorneys for Plaintiff/Counter-Defendant PCH
Mutual Insurance Company, Inc.

# 1911678v10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUTUAL INSURANCE )
COMPANY, INC. )
　 )
Plaintiff/Counter-Defendant, )
　 )　　　Civil Action No. 08-CV-0282-CKK
v. )
　 )
CASUALTY & SURETY, INC., )
　 )
Defendant/Counter-Claimant. )
_____ )

## APPENDIX OF DECLARATIONS
## IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

The plaintiff/counter-defendant PCH Mutual Insurance Company, Inc. hereby submits the following declarations in opposition to Casualty & Surety, Inc.'s Motion to Compel Arbitration:

A.    Declaration of Edgar Blumenfeld

B.    Declaration of Tanya M. Thompson

C.    Declaration of Jon Harkavy

This 7th day of April, 2008.

MORRIS, MANNING & MARTIN, L.L.P.

/s/
_____
Robert H. Myers, Jr.
D.C. Bar No. 179242
1401 H Street NW
Suite 760
Washington, D.C. 20005
Tel: (202) 898-0011
Fax: (202) 408-5146

[Signatures continue on the following page]

1962134 v03

[Signatures continued from the preceding page]

Lewis E. Hassett
Georgia Bar No. 336140
Admitted *Pro Hac Vice* 03/04/2008
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Tel:  404-233-7000
Fax: 404-365-9532

Attorneys for Plaintiff/Counter-Defendant PCH
Mutual Insurance Company, Inc.

1962134 v03

# APPENDIX OF DECLARATIONS IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PCH MUTUAL INSURANCE COMPANY, INC. | ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Civil Action No. 08-CV-0282-CKK |
| v. | ) ) | |
| CASUALTY & SURETY, INC., | ) ) ) | |
| Defendant/Counter-Claimant. | ) ) | |

## <u>DECLARATION OF EDGAR BLUMENFELD</u>

1.

My name is Edgar Blumenfeld. I am over the age of 18 and am competent to make this Declaration. This Declaration is made upon personal knowledge. It is given for any use in the above-styled action.

2.

I am the President of PCH Mutual Insurance Company, Inc. ("PCH") and have held that position since April of 2007.

3.

PCH is a risk retention group ("RRG") domiciled in the District of Columbia. PCH writes liability insurance in 33 states and the District of Columbia. PCH has never sold insurance policies or conducted insurance business in California.

4.

I do not know why the Agreement refers to California law, since neither PCH nor any of its business has ever had any connection with California.

5.

PCH has never sold insurance policies in Alabama.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4 day of April, 2008.

Edgar Blumenfeld

1941344 v02

# APPENDIX OF DECLARATIONS IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PCH MUTUAL INSURANCE )
COMPANY, INC. )
          )
      Plaintiff/Counter-Defendant, )
          )    Civil Action No. 08-CV-0282-CKK
     v. )
          )
CASUALTY & SURETY, INC., )
          )
      Defendant/Counter-Claimant. )
          )

## DECLARATION OF TANYA M. THOMPSON

1.

My name is Tanya Thompson.  I am over the age of 18 and am competent to make this Declaration.  This Declaration is made upon personal knowledge.  It is given for any use in the above-styled action.

2.

I am a paralegal at Morris, Manning & Martin, LLP in Washington, D.C. and have held this position since August 20, 2007.

3.

On April 4, 2008, I researched whether CSI has qualified to do business with the California Secretary of State.  The official website of the California Secretary of State, http://kepler.sos.ca.gov/list.html, identifies those corporations that have qualified to do business in California. That website included the page attached hereto as Exhibit A, which reflects that CSI first filed with the California Secretary of State for authorization to do business in California on March 18, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ___7th___ day of April, 2008.

Tanya M. Thompson

1957608.3

# Exhibit A
# To The
# Declaration of Tanya M. Thompson



# California Business Portal

## Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of MAR 28, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| CASUALTY & SURETY, INC. | | |
| **Number:** C3092526 | **Date Filed:** 3/18/2008 | **Status:** active |
| **Jurisdiction:** ALABAMA | | |
| **Address** | | |
| 100 CORPORATE PKWY STE 350 | | |
| BIRMINGHAM, AL 35242 | | |
| **Agent for Service of Process** | | |
| PACIFIC REGISTE RED AGENTS, INC . | | |
| 1592 UNION ST STE 201 | | |
| SAN FRANCISCO, CA 94123 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# APPENDIX OF DECLARATIONS IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PCH MUTUAL INSURANCE COMPANY, INC. | ) ) ) ) |  |
| Plaintiff/Counter-Defendant, | ) ) | Civil Action No. 08-CV-0282-CKK |
| v. | ) ) |  |
| CASUALTY & SURETY, INC., | ) ) |  |
| Defendant/Counter-Claimant. | ) ) |  |

## DECLARATION OF JON HARKAVY

1.

My name is Jon Harkavy. I am over the age of 18 and am competent to make this Declaration. This Declaration is made upon personal knowledge. It is given for any use in the above-styled action.

2.

From [date] until present, I have been employed by Risk Services, Inc. ("Risk Services"). Risk Services serves as the manager of PCH Mutual Insurance Company, Inc. ("PCH"). As PCH's manager, Risk Services provides accounting and other insurance-related services and serves as a liaison to insurance regulators.

3.

CSI drafted the Administrative Services Agreement ("the Agreement") between PCH and Casualty & Surety, Inc.

4.

I do not know why CSI drafted the Agreement to refer to California law, since neither PCH nor any of its business had or has any connection with California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this $7T$ day of April, 2008.

_____
Jon Harkavy

-2-