IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re*: | : |
| PCH MUTUAL INSURANCE COMPANY, | : |
|       Plaintiff, | : |
|  versus | : Case No.: 1:08cv00282(CKK) |
| CASUALTY & SURETY, INC., | : |
|       Defendant. | : |

*DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS*

    COMES NOW, before this Honorable Court your defendant *cum* counter-plaintiff in the above-encaptioned cause, *viz.*, Casualty & Surety, Inc. (hereinafter referenced *qua* "CSI"), and replies to the Brief in Opposition to CSI's Motion to Compel Arbitration, filed by your plaintiff *cum* counter-defendant PCH Mutual Insurance Company (hereinafter referenced *qua* "PCH"), by directing the attention of this Honorable Court to the following considerations, *viz.*:

    ***A. Contrary to PCH's Assertions Contained in the Opposition, PCH,
Not CSI Drafted the Administrative Services Agreement;***

    In seeking to have this Honorable Court rule against arbitrability, PCH contends, *ipse dixi*t, that the Administrative Services Agreement was drafted by CSI, citing in its Opposition, only the Declaration of Jon Harkavy (Opp. at 11), and then going on to invoke the doctrine of *contra proferentum*, as it were, to fashion its self-serving case that CSI cannot compel arbitration of the subject dispute whereas, in fact, as evinced by the Declaration of Dave Condon, attached hereto, as "Exhibit 'A'", *it was PCH, not CSI, that actually drafted the Administrative Services Agreement.* Therefore, if either party is subject to the doctrine of *contra proferentum*, it is PCH, not CSI.

1

However, since the conflict between the respective declarations of Messrs. Harkavy and Condon as to the authorship of the Administrative Services Agreement would appears to present a material issue as to authorship of the Administrative Services Agreement, to the extent that this Honorable Court is of the view that such issue is outcome determinative of the issue of arbitrability, CSI respectfully submits that, in such event, CSI should be afforded limited discovery in order to put paid to such threadbare contention raised by Mr. Harkavy.

### B. Because the Parties Specified the Availability of Arbitration in the Administrative Services Agreement, It Follows That The Parties Intended Arbitration be Available Upon Demand for Resolution of Disputes Arising Under the Agreements

The subject arbitration clause in the Administrative Services Agreement provides as follows:

> Any disputes concerning any aspect of this Agreement *may be submitted to binding arbitration.* The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

As Learned Hand once pithily observed: "Words are not pebbles in alien juxtaposition." *NLRB v. Federbush Co.,* 121 F. 2d 954, 957 (2d Cir. 1941). When one considers that the Administrative Services Agreement contemplated a long-term relationship between the parties hereto (*See:* the Administrative Services Agreement at ¶ 1, where a ten year term is specified), it is normal and understandable that the parties would embrace arbitrability of any disputes that may arise under the Agreement, as not to have included a binding arbitration clause would have run counter to standard commercial practice. [1]

By essentially seeking to eviscerate arbitrability from the Administrative Services Agreement, PCH may be seen as, essentially, endeavoring to render comically irrelevant the parties' respective arbitration rights in such a way that calls to mind the following old saw cited by this Honorable Court,

---

1 "A Latin phrase sometimes employed to describe the spirit of much American commercial arbitration is *ex aequo et bono* -- a resolution is sought that is equitable, minimizes harm to either party, and enables potential adversaries to maintain a valuable commercial relationship[.]" Paul D. Carrington and Paul H. Haagen, "Contract and Jurisdiction," 1996 Sup. Ct. Rev. 331 (1996).

in *Transwestern Pipeline Co. v. Federal Energy Regulatory Com.,* 747 F. 2d 781, 786, 241 U.S. App. D.C. 344 (D.C. Cir. 1983), where now Justice Scalia, then a circuit court judge, offered the following nursery rhyme, albeit in a different context, about the mother who gave her daughter permission to go swimming whilst admonishing her not to go near the water, *viz.*:

> Mother may I go out to swim?
> Yes, my darling daughter,
> Hang your clothes on a hickory limb
> And don't go near the water.
> (*Id.* at Footnote #1, quoting Anonymous, *Familiar Quotations by John Bartlett* (14th ed.), p. 1103a$^2$.

*Id.*, 747 F. 2d at 786.

Contrary to the position now advanced by PCH in its subject Opposition, the parties' desire to have disputes arising under the Administrative Services Agreement subject to binding arbitration is pellucidly clear. Thus, PCH's putative invocation of extrinsic evidence is, in any event, unavailing. *See: Consolidated Gas Transmission Corp. v. FERC,* 248 U.S. App. D.C. 396, 777 F. 2d 1536 1544 (D.C. 1985) ("If a contract is not ambiguous, extrinsic evidence cannot be used as an aid in its interpretation."); see, also: Restatement (Second) of Trusts,§164, *comment e* (1959); *see,also: Brubaker* v. Metropolitan Life Ins. Co., 482 F. 3d 586, 590 (D.C. Cir. 2007).

### C. Even if the Law of the District of Columbia Were to be Found to be Applicable to the Instant Dispute, Disputes Arising Under the Administrative Services Agreement Would Still Properly be Subject to Arbitration

PCH's central contentions are as follows: (1) that District of Columbia law applies to this case; and (2) that the outcome is controlled by the unreported decision of *Group Hospitalization and*

---

2 In *Transwestern, supra,* Judge Scalia, then a Circuit Judge, used the said rhyme to illustrate the illogicality of the Federal Energy Regulatory Commission's failure to ". . . (achieve) the stated purpose of the Commission's declaratory orders, 'to terminate a controversy or remove uncertainty,'(citing)18 C.F.R., § 1.7 (c) (1981) (amended and recodified at 18 C.F.R. § 385.207 (2) (1984))", where the Commission stated to a marketer of natural gas that "we agree that you can obtain this gas without relinquishing your exemption from federal regulation, but we express no opinion as to whether you can market it." 747 F. 2d at 786.

*Medical Services, Inc. v. Stubbs,* No. 90-823, 1990 U.S. Dist. LEXIS 15335 (D.C. Nov. 16, 1990).

Tellingly, no federal or state courts within the District of Columbia have relied upon, much less cited, *Stubbs*. Indeed, the United States District Court for the Eastern District of Michigan—the only court to even mention *Stubbs*—considered and rejected *Stubbs*' holding. Behold thus:

> In *Stubbs*, the court concluded that "[t]he use of the word 'may' evinces the parties' intent not to be bound to invoke the arbitration machinery to settle their disputes." *1990 U.S. Dist. LEXIS 15335, [WL] at \*2*. The court then found that if the parties had intended to provide for mandatory arbitration of disputes, they could have substituted the word 'shall' for 'may.' *Id.* The Court is not persuaded by this reasoning. In this Court's opinion, if the parties had intended the arbitration provision to be permissive, they could have provided "either party may seek resolution of the question or controversy pursuant to binding arbitration ***or through litigation***."
>
> *Detroit Edison Co. v. Burlington Northern and Santa Fe Railway Co.,* 442 F.Supp. 2d 387, 390 n.2 (E.D. Mich. 2006)

In fact, the vast majority of courts—including the United States Supreme Court—have held these types of arbitration clauses do not allow a party to avoid arbitration. *See, e.g.: Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59 (1965) (holding that "[u]se of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the [contract's arbitration] procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation."); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985) (noting that "[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures"); *Nemitz v. Norfolk & Western Railway Co.*, 436 F.2d 841 (6th Cir. 1971) (holding an arbitration clause which provided that disputes 'may' be referred to arbitration was mandatory if either party to the agreement invoked arbitration).

4

*E. Conclusion*

For the foregoing reasons, together with those factors referenced in the Memorandum in Support of the subject Motion, together with a due consideration of the record herein, your defendant cum counter-plaintiff, CSI respectfully prays that such Motion be granted, and that it be afforded such other and further relief as may be deemed by this Honorable Court to be just and fitting.

                Respectfully submitted,

                /s/ Joseph Peter Drennan
                **JOSEPH PETER DRENNAN**
                218 North Lee Street
                Third Floor
                Alexandria, Virginia 22314
                Telephone: (703) 519-3773
                Telecopier: (703) 548-4399
                *E-mail:* joseph@josephpeterdrennan.com
                District of Columbia Unified Bar No. 358196

                Jarrod B. Bazemore, Esquire
                Alton B. Parker, Jr., Esquire
                Spain & Gillon, L.L.C.
                The Zinszer Building
                2117 Second Avenue North
                Birmingham, Alabama 35203.

                ATTORNEYS AND COUNSELLORS
                 FOR CASUALTY & SURETY, INC.

## *CERTFICIATE OF SERVICE*

I, Joseph Peter Drennan, undersigned, hereby and herewith certify that, on this 25th day of the month of April, 2008, a true cyclostyled facsimile of the foregoing was despatched by carriage of First Class Post, through the United States Postal Service, with adequate postage prepaid thereon, enshrouded in a suitable wrapper, unto the following, *viz.*:

Irwin Rafael Kramer, Esquire
James M. Connolly, Esquire
Kramer & Connolly
500 Redland Court
Suite 211
Owings Mills, Maryland 21117;

Lewis E. Hassett, Esquire
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326; &

Robert Holt Myers, Jr., Esquire
Morris, Manning & Martin
1401 "H" Street, N.W.
Suite 760
Washington, D.C. 20005-2034

    Respectfully submitted,

     /s/ Joseph Peter Drennan
    **JOSEPH PETER DRENNAN**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PCH MUT. INS. CO., INC. | * | |
| Plaintiff/Counter-Defendant, | * | |
| v. | * | Civil Action No. 2008 - 000282 CKK [Judge Colleen Kollar-Kotelly] |
| CASUALTY & SURETY, INC., | * | |
| Defendant/Counter-Plaintiff. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION OF DAVE CONDON

1. My name is Dave Condon. I am over the age of 18 and am competent to make this Declaration. I have personal knowledge of the matters set forth herein.

2. I was involved in the negotiations that ultimately concluded in the execution of the Administrative Services Agreement between Casualty & Surety, Inc. ("CSI") and PCH Mutual Insurance Company ("PCH").

3. I supplied Risk Services with agreements previously executed by CSI in such regard.

4. Risk Services apparently utilized those specimen agreements in drafting the Administrative Services Agreement.

5. For the foregoing reasons, paragraph 3 of Jon Harkavy's declaration, which provides that "CSI drafted the Administrative Services Agreement ("the Agreement") between PCH and Casualty & Surety, Inc.," is false.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of April, 2008.

_____
Dave Condon