**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

PCH MUTUAL INSURANCE
COMPANY, INC,

    Plaintiff,

     v.

CASUALTY & SURETY, INC.,

    Defendant.

---

Civil No. 08-282 (CKK)

**MEMORANDUM OPINION**
(August 5, 2008)

The above-captioned action arises out of an alleged breach of an Administrative Services

Agreement (the "Agreement") entered into by Plaintiff PCH Mutual Insurance Company, Inc.

("PCH") and Defendant Casualty & Surety, Inc. ("CSI"). After removing this action from the

Superior Court for the District of Columbia, CSI filed a Motion to Compel Arbitration and Stay

Proceedings, which PCH opposes. Despite the pending Motion to Compel Arbitration, the

parties appear to have agreed to and begun discovery in this matter, without a Court order to that

effect. However, recognizing that engaging in discovery might prejudice its Motion to Compel

Arbitration, CSI filed a Motion to Stay Discovery pending resolution of that Motion, which PCH

likewise opposes. The Court has conducted a searching review of the parties' filings in

connection with the two pending motions, the exhibits attached thereto, the relevant statutes and

case law, and the entire record herein. Based upon the foregoing, the Court concludes that a

genuine issue of material fact exists as to whether the parties' Agreement provides for mandatory

arbitration of disputes arising out of the Agreement. As "the making of the agreement for

arbitration" between the parties is thus "in issue," the Court shall, as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, "proceed summarily to the trial" of the issue. Accordingly, the Court shall HOLD IN ABEYANCE CSI's [8] Motion to Compel Arbitration and Stay Proceedings and, as set forth in the Order accompanying this Memorandum Opinion, shall require the parties to confer and submit to the Court in a joint status report a proposal and schedule for further proceedings to resolve the arbitrability issue. Further, because the Court must resolve the threshold arbitrability issue before the litigation of this matter can continue, the Court shall GRANT-IN-PART CSI's [27] Motion to Stay Discovery and shall stay discovery related to the merits of this litigation pending a resolution of the threshold arbitrability issue. The parties may, however, conduct discovery related to the issue of arbitrability, if such discovery is appropriate in proceeding to a trial of the issue. If that is the case, the parties should submit a joint discovery plan to the Court for its approval.

## I. BACKGROUND

Plaintiff PCH is a risk retention group (RRG), domiciled in the District of Columbia, whose "primary activity consists of assuming and spreading all, or any portion of the liability exposure of its group members." Pl.'s Mot. to Compel Opp'n at 1-2 (quoting 15 U.S.C. § 3901(4)). Defendant CSI is an insurance broker based in Alabama. Def.'s Mot. to Compel at 4. On March 18, 2008, after the above-captioned action was filed in Superior Court, CSI filed with the California Secretary of State to qualify to do business in California. Pl.'s Mot. to Compel Opp'n at 3 (citing Ex. B (4/7/08 Decl. of T. Thompson ¶ 3)).

On March 31, 2004, PCH and CSI entered into an Administrative Services Agreement, under which CSI was to act as PCH's managing general underwriter. *Id.*; Def.'s Mot. to Compel,

Ex. A (Agreement).  Relying upon a Declaration made by Jon Harkavy, PCH's manager, PCH

asserts that CSI drafted the Agreement at issue in this case.  *See* Pl.'s Mot. to Compel Opp'n at

11, Ex. C (4/7/08 Decl. of J. Harkavy).  In contrast, CSI asserts, relying upon the Declaration of

Dave Condon, that PCH drafted the Agreement.  Def.'s Mot. to Compel Reply at 1, Ex. A

(4/25/08 Decl. of D. Condon)  Specifically, in his Declaration, Mr. Condon avers that he "was

involved in the negotiations that ultimately concluded in the execution of the [Agreement]," that

he "supplied [PCH] with agreements previously executed by CSI in such regard," that PCH

"apparently utilized those specimen agreements in drafting the [Agreement]," such that as a

result, Mr. Harkavy's declaration is allegedly false insofar as it asserts that CSI drafted the

Agreement.  *Id.*

      Only a few of the Agreement's provisions are relevant to the pending motions.  First, and

most significantly, Paragraph 17[1] of the Agreement provides:

> 17. **<u>Arbitration.</u>**  Any disputes concerning any aspect of this Agreement may be
> submitted to binding arbitration.  The prevailing party shall be entitled to recover
> all costs incurred, including reasonable attorney's fees.

Agreement  ¶ 17.  In addition, Paragraph 14 of the Agreement provides:

> 14. **<u>Injunction.</u>**  In the event that [CSI], its employees, agents, brokers and/or
> representatives, attempt to breach the terms of this Agreement, [PCH] shall, in
> addition to its rights and remedies available to it at law or in equity, have the right
> to seek an injunction against [CSI] to enforce the provisions of this Agreement.
> [CSI] agrees to be responsible for and to reimburse [PCH] for any attorney's fees
> and costs associated with any legal action taken by [PCH] to enforce the terms of

---

[1] The final six paragraphs of the Agreement are misnumbered, with the paragraph
following Paragraph 19 erroneously labeled with number 16.  As labeled, the Agreement has two
paragraphs numbered 16, 17, 18, and 19.  *See generally* Agreement.  For ease of reference, the
Court shall refer to the first set of paragraphs so-numbered as Paragraphs 16 through 19, and
shall refer to the misnumbered paragraphs as if they had been sequentially numbered, i.e., as
Paragraphs 20 through 25.

this Agreement.

*Id.* ¶ 14.  Finally, Paragraph 24 of the Agreement provides:

> [24].  **Binding Effect and Governing Law.**  This Agreement binds and benefits
> the parties, their permitted successors, assigns and transferee[s], if specifically
> enforceable and governed by and construed in accordance with the law of the
> [State of] California.

*Id.* ¶ 24.

On January 22, 2008, PCH filed a four-count complaint against CSI in the Superior Court

for the District of Columbia (Case No. 08-00499).  *See* Docket No. [1].  On February 19, 2008,

CSI removed the case to this Court, and on February 25, 2008, CSI filed its Answer and

Counterclaim.  *Id.*; Docket No. [4].   In its Answer, CSI advised the Court that on February 21,

2008, it served notice upon PCH of CSI's intent to petition this Court for an Order compelling

arbitration, and further advised that CSI would file such a petition with the Court if PCH did not

consent to CSI's request.  *Id.* at 5 n.1.  CSI filed its Motion to Compel Arbitration and Stay

Proceedings on March 7, 2008.  *See generally* Def.'s Mot. to Compel.  PCH filed an Opposition

to CSI's Motion, and CSI filed a Reply in support of its Motion.

On May 7, 2008, PCH filed a Motion for Leave to File a Sur-Reply in further opposition

to CSI's Motion to Compel Arbitration, in order to respond to CSI's citation of two Supreme

Court cases for the first time in its Reply.  *See* Docket No. [22].  Although that Motion indicates

that CSI opposes PCH's request to file a sur-reply, CSI has not filed an opposition to that effect.

As the Court concludes that CSI's Reply in fact raises a new argument, the Court shall grant

PCH's [22] Motion for Leave to File a Sur-Reply in the Order accompanying this Memorandum

Opinion, and shall consider PCH's sur-reply herein.  *See United States ex rel. Pogue v. Diabetes*

*Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond.").

Finally, on July 15, 2008, CSI filed a Motion to Stay Discovery pending the Court's resolution of its Motion to Compel Arbitration.[2] CSI asserts that after it filed its Motion to Compel Arbitration, the parties to this action conducted a conference pursuant to Federal Rule of Civil Procedure 26(f), and subsequently exchanged initial disclosures pursuant to Rule 26(a)(1). Def.'s Mot. to Stay at 2. CSI argues, however, that engaging in further discovery is inefficient in light of the pending Motion to Compel Arbitration, and asserts that it is afraid of being viewed as having waived its right to arbitrate by engaging in further discovery. *Id.* at 2-3. PCH opposes CSI's Motion to Stay Discovery.

## II. DISCUSSION

### A.    *Legal Standard*s

The Federal Arbitration Act provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has emphasized, the FAA

---

[2] CSI initially filed its Motion to Stay Discovery on July 7, 2008, however its motion failed to include a representation, as required by LCvR 7(m), that CSI's counsel discussed its motion with opposing counsel before filing it in order to determine whether the motion was opposed. Accordingly, by Minute Order dated July 9, 2008, the Court denied CSI's initial Motion to Stay Discovery without prejudice and directed CSI to refile its motion with the appropriate representation included. CSI did so on July 15, 2008.

"strongly favors the enforcement of agreements to arbitrate as a means of securing 'prompt, economical and adequate solution of controversies,'" *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479-80 (1989) (quoting and overruling *Wilko v. Swan*, 346 U.S. 427, 438 (1953)), and requires that courts "rigorously enforce agreements to arbitrate," *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).  Further, where an agreement contains a valid arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983), and "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT & T Tech.*, 460 U.S. at 648 (quoting *Warrior & Gulf*, 363 U.S. at 582).  As such, the general presumption in favor of arbitrability "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." *Institut Pasteur v. Chiron Corp.*, No. Civ. A. 03-0932 (JDB), 2005 WL 366968, *10 (D.D.C. Feb. 16, 2005) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  Once the Court concludes that a binding agreement to arbitrate exits, the presumption in favor of arbitrability applies to issues regarding the scope of the agreement to arbitrate.  *See First*

6

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).  Determining whether a

contract indicates an agreement to arbitrate is usually a task for the Court, rather than the

arbitrator.  *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("a gateway dispute

about whether the parties are bound by a given arbitration clause raises a 'question of

arbitrability' for a court to decide.").

　　　　The Court applies state contract law in determining whether there is an enforceable

agreement to arbitrate.  *See First Options*, 514 U.S. at 943-44.  As such, in considering

Defendants' Motion to Compel Arbitration, the Court must address an initial dispute between the

parties as to which state's law applies in the instant case.  Generally speaking, a federal court

sitting in diversity must apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor

Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Further, "District of Columbia courts give effect to

contractual choice of laws provisions 'as long as there is some reasonable relationship with the

state specified.'" *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153-54 n.3 (2008)

(quoting *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)).  In its Motion to Compel Arbitration,

CSI asserts that the Agreement is governed by California law, based upon Paragraph 24 of the

Agreement, which states:

> [24].  **Binding Effect and Governing Law.**  This Agreement binds and benefits
> the parties, their permitted successors, assigns and transferee[s], if specifically
> enforceable and governed by and construed in accordance with the law of the
> [State of] California.

Agreement ¶ 24.  On its face, however, this provision does not dictate that the Agreement must

be interpreted pursuant to California law.  Instead, as PCH correctly explains, "it conditions the

rights of successors and assigns on the enforceability of their successor rights under California

law." Pl.'s Mot. to Compel Opp'n at 8.

In addition, even if Paragraph 24 purported to be a choice of law clause dictating the application of California law, PCH is correct in arguing that "[n]either the parties nor the Agreement has a reasonable connection to California" because "no portion of the Agreement was to be performed in California, neither of the parties is based in California, PCH does not do business in California and is not qualified to do so, and CSI did not even qualify to do business in California" until after it filed its Motion to Compel Arbitration. *Id.* Tellingly, CSI makes no effort in its Reply to press its contention that Paragraph 24 constitutes a true choice of law provision that mandates the application of California law in this case. For the foregoing reasons, the Court concludes that it does not.

Under District of Columbia law, where the parties to a contract have not agreed on a choice of law, the court uses a "constructive blending of the governmental interest analysis and the most significant relationship test," to determine which state's laws apply. *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 194 (D.C. Cir. 1999) (internal quotations omitted). Consistent with the Restatement (Second) of Conflict of Laws § 188, District of Columbia courts consider "(1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). Here, it is clear that the parties have a significant relationship to the District of Columbia, such that its contract law should govern the Agreement. As PCH explains, it is based in the District of Columbia. and the agreement was to be performed in part in the District of Columbia. Pl.'s Mot. to Compel Opp'n at 9. Indeed,

8

PCH's operations are regulated entirely by the District of Columbia's risk retention group regulations. *Id.* at 10. Thus, while CSI is a citizen of Alabama and the Agreement was to be performed in part in that state, *id.* at 9, CSI offers no evidence (and does not even argue) that Alabama "has a potential interest in having its law applied" such that a "true conflict" of laws or governmental interests exists. *Wachsman v. Islamic Republic of Iran*, 537 F. Supp. 2d 85 (D.D.C. 2008). As such, the Court concludes that the Agreement is governed by District of Columbia law.

Returning, then, to the principles of District of Columbia contract law that control this Court's determination of whether the Agreement includes an enforceable agreement to arbitrate, that law provides that "arbitration is predicated upon the consent of the parties . . . and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contracts between the parties." *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000) (quoting *Ballard & Assocs., Inc. v. Magnum*, 368 A.2d 548, 551 (D.C. 1977)). Further, "an enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms. In other words, a contract is not formed unless the parties reach an accord on all material terms and indicate an intention to be bound." *Id.* (quoting *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)). District of Columbia law requires that the Court "closely" examine the question of the parties' intent to be bound, *Jack Baker*, 664 A.2d at 1239, and "the party asserting the existence of a contract has the burden of proving its existence," *Bailey*, 209 F.3d at 746 (citing *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) (per curiam)).

Finally, the FAA provides that a court "upon being satisfied that [an] issue [is] referable

to arbitration under [a written] agreement, shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As such, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (emphasis in original). Thus, "the proper approach to employ in reviewing the defendant's motion to [] compel arbitration is to apply the same standard of review that governs Rule 56 motions" for summary judgment. *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003). Accordingly, it is appropriate to grant a motion to compel arbitration when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under that framework, the party seeking to compel arbitration bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The court should draw all inferences from the supporting records submitted by the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in favor of its position. *Id.* at 252. "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

    B.      *Genuine Issues of Material Fact Exist Regarding the Arbitrability of the Agreement*

As noted above, Paragraph 17 of the Agreement provides:

> 17. **<u>Arbitration.</u>**  Any disputes concerning any aspect of this Agreement may be submitted to binding arbitration.  The prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees.

Agreement  ¶ 17.  In moving to compel arbitration and stay the proceedings in this action, CSI argues that "there is no dispute as to the validity, the revocability, or the enforceability of the Agreement," and that "[b]ecause the parties have agreed to arbitrate disputes involving 'any aspect' of the Agreement, the disputes at issue in this action fall squarely within the scope of the Agreement's arbitration clause."  Def.'s Mot. to Compel at 5.  PCH does not dispute that the Agreement is a valid, binding, and enforceable contract as between the parties, nor does it contend that the particular issues in this action are outside the scope of the Agreement's arbitration clause.  Rather, PCH argues that "the plain language of the arbitration clause, other provisions of the [Agreement] and the other evidence before this court reflect an intent to allow only permissive arbitration."  Pl.'s Mot. to Compel Opp'n at 1.  The Court's review of the parties' briefs reveals that a genuine issue of material fact exists as to whether the parties agreed to mandatory arbitration of disputes arising out of the Agreement.

As an initial matter, a clear dispute exists as to what should ordinarily be an easily resolved issue: identifying the drafter of the Agreement.  Relying upon Mr. Harkavy's Declaration, which states without any elaboration that "CSI drafted the [Agreement] between PCH and [CSI]," *see* Pl.'s Mot. to Compel Opp'n, Ex. C (Harkavy Decl.) ¶ 3, PCH asserts that any ambiguity in the Agreement must be construed against CSI's interests in light of the

common-law rule of contract interpretation that any ambiguous contract language should be construed against the interest of the party that drafted the contract.  Pl.'s Mot. to Compel Opp'n at 10-11.  This rule is certainly applied under District of Columbia law, as well as in cases considering arbitration agreements under the FAA.  *See Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1013-14 (D.C. 2002); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).  However, as noted above, Mr. Harkavy's claim that CSI drafted the Agreement is flatly contradicted by Mr. Condon's slightly more detailed Declaration, which CSI offers in support of its claim that PCH actually drafted the Agreement.  *See* Def.'s Mot. to Compel Reply at 1, Ex. A (Condon Decl.) ¶¶ 2-5.  While identifying the drafter of the Agreement might not be material if the Agreement itself were unambiguous as to the issue of arbitrability, as discussed below, the Agreement does not clearly reveal whether the parties agreed to mandatory arbitration. As such, identifying the drafter of the Agreement may ultimately sway the Court's analysis of the arbitrability issue.

In its Reply, CSI maintains that "the parties' desire to have disputes arising under the [Agreement] subject to binding arbitration is pellucidly clear," and that, as a result, PCH may not resort to extrinsic evidence regarding the Agreement's meaning.  Def.'s Reply at 3.  The Court cannot agree with CSI.  Significantly, as PCH stresses, the first sentence of the arbitration clause provides that any dispute concerning the Agreement "*may* be submitted to binding arbitration," while the second sentence of the clause provides that the party that prevails in arbitration "*shall* be entitled to recover all costs incurred, including reasonable attorney's fees."  Agreement ¶ 17; Pl.'s Mot. to Compel Opp'n at 11.  As a general matter of contract law, the word "may" is viewed as a permissive, rather than mandatory, term, particularly when used in contraposition to

the word "shall."  *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346

(2005); *Ace Contractors, Inc. v. United States*, 70 Fed. Cl. 253, 288 (Fed. Cl. 2006), *aff'd*, 499

F.3d 1357 (Fed. Cir. 2007).

Significantly, the sole court in this district that appears to have considered the effect of

the use of the word "may" in an arbitration clause between private parties appears to have been

swayed by the distinction between the terms "may" and "shall."  In *Group Hospitalization and*

*Medical Services, Inc. v. Stubbs*, Civ. A. No. 90-823, 1990 WL 183576 (D.D.C. Nov. 16, 1990),

Judge Thomas A. Flannery concluded that "the use of the word 'may' in the [] arbitration clause

evinces the parties' intent not to be bound to invoke the arbitration machinery to settle their

disputes. . . . Had the parties intended to provide for mandatory arbitration of disputes, they could

have simply substituted the word 'shall' for 'may.'"  *Id.* at *2 (D.D.C. Nov. 16, 1990).  The

Court agrees with *Stubbs*' reasoning insofar as it indicates that the use of the word "may" raises a

question as to whether the parties intended the Agreement's arbitration clause to require

mandatory arbitration.[3]

CSI nevertheless asserts that the Court should read the word "may" in the first sentence of

the arbitration as requiring mandatory arbitration because the parties "already had the right to

engage in consensual arbitration."  Def.'s Mot. to Compel at 8.  According to CSI, reading the

---

[3] For its part CSI asserts that "no federal or state courts within the District of Columbia have relied upon, much less cited, *Stubbs*," and that the only court that appears to have directly considered *Stubbs*, the United States District Court for the Eastern District of Michigan, appears to have rejected its reasoning.  Def.'s Reply at 4 (quoting *Detroit Edison Co. v. Burlington Northern and Santa Fe Railway Co.*, 442 F. Supp. 2d 387, 390 n.2 (E.D. Mich. 2006)).  The fact that *Stubbs* is not readily cited, however, is likely attributable to the relative infrequency of arbitration clauses that use the word "may" as opposed to those that use the word "shall," and the Eastern District of Michigan's opinion is far from binding on this Court.

word "may" as permissive would "amount to no more than a barren recital that the parties might

in the future agree to arbitrate a dispute." *Id.* (quotation omitted).  CSI is correct that, under

District of Columbia law, "[i]t is a settled rule of contract interpretation that contract language

should not be interpreted to render the contract promise illusory or meaningless." *Caglioti v.*

*Dist. Hosp. Partners, LP*, 933 A.2d 800, 811 (D.C. 2007) (quoting *Retail Clerks Int'l Ass'n v.*

*NLRB*, 510 F.2d 802, 806 n.15 (1975)).  Moreover, based upon this principle, both the Fourth

Circuit Court of Appeals and the Eighth Circuit Court of Appeals have concluded that the use of

the word "may" did not render an arbitration clause permissive because such an interpretation

would leave the clause devoid of meaning.  *See United States v. Bankers Ins. Co.*, 245 F.3d 315,

320-21 (4th Cir. 2001); *Am. Ital. Pasta Co. v. Austin Co.*, 914 F.2d 1103 (8th Cir. 1990).

        Applying that principle in this case might suggest that the arbitration clause be read as

providing that either party may submit a dispute to arbitration, which becomes binding upon the

parties once invoked.  However, the arbitration clause at issue in this case differs significantly

from the clauses considered by the Fourth and Eighth Circuits because, in addition to providing

that parties "may" submit disputes to binding arbitration, it continues to provide that the party

that prevails in arbitration "shall be entitled to recover all costs incurred, including reasonable

attorney's fees."  Agreement ¶ 17.  As such, as PCH explains, another plausible interpretation of

the arbitration clause is that "arbitration is permissive, not mandatory, but that if the parties agree

to arbitrate, the loser pays the winner's attorneys' fees."  Pl.'s Mot. to Compel Opp'n at 13.

Based upon the language of the arbitration clause alone, the Court cannot determine which of

these interpretations is correct.

        In addition, other aspects of the arbitration clause and the Agreement demonstrate further

14

ambiguity as to whether the parties intended to provide for mandatory arbitration of disputes. First, as PCH notes, the arbitration clause does not identify the arbitrator, a method for choosing the arbitrator, or a place of arbitration.  Pl.'s Mot. to Compel Opp'n at 12.  While this shortcoming does not necessarily prove that the parties did not reach a "meeting of the minds," it is probative of whether the parties actually considered or agreed upon all material terms of an agreement to arbitrate.  Moreover, in addition to the arbitration clause, the Agreement contains another paragraph that addresses the handling of disputes arising out of the Agreement.

Paragraph 14 provides:

> 14. **Injunction.**  In the event that [CSI], its employees, agents, brokers and/or representatives, attempt to breach the terms of this Agreement, [PCH] shall, in addition to its rights and remedies available to it at law or in equity, have the right to seek an injunction against [CSI] to enforce the provisions of this Agreement. [CSI] agrees to be responsible for and to reimburse [PCH] for any attorney's fees and costs associated with any legal action taken by [PCH] to enforce the terms of this Agreement.

Agreement ¶ 14.  As PCH points out, "[t]his language, which expressly permits judicial intervention, is inconsistent with mandatory arbitration."  Pl.'s Mot. to Compel Opp'n at 12-13.

In the face of PCH's arguments that the Agreement does not require mandatory arbitration, CSI asserts that "the vast majority of courts–including the United States Supreme Court–have held these types of arbitration clauses [i.e., clauses using the word "may"] do not allow a party to avoid arbitration."  Def.'s Reply at 4 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59 (1965); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985); and *Nemitz v. Norfolk & Western Railway Co.*, 436 F.2d 841 (6th Cir. 1971)).  The cases CSI cites do find that the use of the term "may" is not sufficient to render an agreement to arbitrate permissive.  All of those cases, however, involve the interpretation of arbitration clauses in the

15

context of collective bargaining agreements.  As such, they are distinguishable from the instant case by virtue of the "heavy presumption in favor of mandatory arbitration of disputes under collective bargaining agreements." *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 434-35 (D.C. Cir. 1994).  While the D.C. Circuit has made clear that non-labor agreements to arbitrate must also be vigorously enforced, *see Nat'l R.R. Passenger Corp. v. Consolidated Rail Corp.*, 892 F.2d 1066, 1072 (D.C. Cir. 1990), as discussed above, the presumption in favor of arbitrability in the non-labor context only arises once the Court concludes that a binding agreement to arbitrate exists.  Here, the foregoing discussion makes clear that the Court cannot reach such a conclusion based on the evidence before it.

As noted above, the FAA provides that the Court "upon being satisfied that [an] issue [is] referable to arbitration under [a written] agreement, shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The FAA also provides, however, that the Court may only do so "upon being satisfied that the making of the agreement for arbitration . . . is not in issue," and that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  *Id.* § 4.  In the instant case, it is not clear beyond genuine dispute that the parties agreed to mandatory arbitration of disputes arising out of the Agreement.  Nor can the Court accept PCH's argument that the Agreement provides for only permissive arbitration that may be eschewed in favor of litigation. "Instead, having concluded that 'the making of the agreement for arbitration' between [PCH and CSI] is 'in issue,' the Court must conduct further proceedings to determine the issue." *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 39-40 (D.D.C. 2004); *see also Smith Wilson Co. v. Trading and Dev. Establishment*, 744 F. Supp. 14 (D.D.C. 1990); *Bensadoun v. Jobe-Riat*, 316

16

F.3d 171, 175 (2d Cir. 2003) ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.").

In response to the factual dispute regarding the authorship of the Agreement, CSI offers the suggestion that "to the extent that [the Court] is of the view that such issue is outcome determinative of the issue of arbitrability," "CSI should be afforded limited discovery in order to [contest the] threadbare contention raised by Mr. Harkavy." Def.'s Mot. to Compel Reply at 2. Such discovery may well be appropriate, but in light of the FAA's clear instruction that a trial of the issue of arbitrability is in order and the variety of questions raised above with respect to that issue, the Court will not, at this point, limit discovery between the parties to the authorship of the Agreement. Instead, as set forth in the Order accompanying this Memorandum Opinion, the Court shall order the parties to confer and submit to the Court a proposal and schedule for further proceedings to resolve the general issue of arbitrability.

C.    *Discovery as to the Merits of this Litigation Shall Be Stayed Pending Resolution of the Threshold Issue of Arbitrability*

After CSI filed its Motion to Compel Arbitration, the parties to this action conducted a conference pursuant to Federal Rule of Civil Procedure 26(f) and exchanged initial disclosures pursuant to Rule 26(a)(1). Def.'s Mot. to Stay at 2. Thereafter, CSI apparently determined that engaging in further discovery before the Motion to Compel was resolved would be inefficient and might prejudice CSI's right to compel arbitration, and therefore moved to stay discovery on the merits of the litigation pending resolution of the Motion to Compel Arbitration. *Id.* at 2-3. PCH opposes CSI's Motion to Stay Discovery, arguing that the parties voluntarily agreed to commence discovery and that it would be inefficient to halt the discovery that has begun. *See*

17

*generally* Pl.'s Mot. to Stay Opp'n.  While it is true that under the Federal Rules of Civil

Procedure parties may voluntarily seek discovery once they have engaged in a Rule 26(f)

conference, the parties' voluntary agreement to engage in discovery does not have the effect of a

court-ordered discovery schedule.  *See* Fed. R. Civ. P. 26(d).  Moreover, as PCH recognizes, the

Court has extremely broad discretion in controlling discovery, Pl.'s Mot. to Stay Opp'n at 3

(citing *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998), and the decision on whether to stay

discovery is within the sound discretion of the district court, *see White v. Fraternal Order of

Police*, 909 F.2d 512, 517 (D.C. Cir. 1990).  Here, the Federal Arbitration Act requires that the

Court resolve the threshold issue of whether the parties agreed to mandatory arbitration before

the litigation of this matter can continue.  As such, the Court shall GRANT-IN-PART CSI's

Motion to Stay Discovery and shall stay discovery related to the merits of this litigation pending

a resolution of the threshold arbitrability issue.  The parties may, however, conduct discovery

related to the issue of arbitrability, if such discovery is appropriate in proceeding to a trial of the

issue.  If that is the case, the parties should submit a joint discovery plan to the Court for its

approval.

### III. CONCLUSION

For the foregoing reasons, the Court shall HOLD IN ABEYANCE CSI's [8] Motion to

Compel Arbitration and Stay Proceedings and, as set forth in the Order accompanying this

Memorandum Opinion, shall require the parties to confer and submit to the Court in a joint status

report a proposal and schedule for further proceedings to resolve the issue of arbitrability.

Further, the Court shall GRANT-IN-PART CSI's [27] Motion to Stay Discovery and shall stay

discovery related to the merits of this litigation pending a resolution of the threshold arbitrability

issue.  An appropriate Order accompanies this Memorandum Opinion.


Date:   August 5, 2008


                                                   _____/s/_____
                                                   COLLEEN KOLLAR-KOTELLY
                                                   United States District Judge